## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| WHIRLPOOL CORPORATION, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 2:15-CV-1528-JRG |
| v. | § | |
| | § | |
| TST WATER, LLC, | § | |
| | § | **JURY TRIAL DEMANDED** |
| Defendant. | § | |
| | § | |
| | § | |

## <u>JOINT FINAL PRE-TRIAL ORDER FOR *WHIRLPOOL v. TST WATER* TRIAL</u>

The Pretrial Conference is scheduled for February 27, 2017 in Marshall, Texas, pursuant to the Court's Amended Docket Control Order (Dkt. 81), docket notice dated January 17, 2017 resetting hearing, and Rule 16 of the Federal Rules of Civil Procedure. The following parties submit this Joint Pretrial Order:

## A.    COUNSEL FOR THE PARTIES

### 1.    Plaintiff Whirlpool Corporation

MICHAEL A. JACOBS (CA SBN 111664)
(admitted in the Eastern District of Texas)
mjacobs@mofo.com
RICHARD S.J. HUNG (CA SBN 197425)
(admitted in the Eastern District of Texas)
rhung@mofo.com
BARBARA N. BARATH (CA SBN 268146)
(admitted in the Eastern District of Texas)
bbarath@mofo.com
CHRISTOPHER JAMESON KENDALL (CA SBN 302683)
(admitted in the Eastern District of Texas)
ckendall@mofo.com
RACHEL S. DOLPHIN (CA SBN 305477)
(admitted in the Eastern District of Texas)
rdolphin@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482

Telephone: (415) 268-7000
Facsimile: (415) 268-7522

MELISSA R. SMITH (TX SBN 24001351)
melissa@gillamsmithlaw.com
GILLAM & SMITH, LLP
303 S. Washington Avenue
Marshall, Texas 75670
Telephone: (903) 934-8450
Facsimile: (903) 934-9257

T. JOHN WARD, JR. (TX SBN 00794818)
jw@wsfirm.com
CLAIRE ABERNATHY HENRY
(TX SBN 24053063)
claire@wsfirm.com
ANDREA FAIR
andrea@wsfirm.com
WARD, SMITH & HILL, PLLC
1507 Bill Owens Parkway
Longview, Texas 75604
Telephone: (903) 757-6400
Facsimile: (903) 757-2323

JEFFREY D. HARTY (IA AT0003357)
jeff.harty@nyemaster.com
DAVID T. BOWER (IA AT0009246)
dbower@nyemaster.com
NYEMASTER GOODE, P.C.
700 Walnut, Suite 1600
Des Moines, Iowa 50309
Telephone: (515) 283-5506
Facsimile: (515) 283-3108

2.    **Defendant TST Water, LLC**

JOHN B. SGANGA, JR. (CA SBN 116211)
(admitted in the Eastern District of Texas)
john.sganga@knobbe.com
SEAN M. MURRAY (CA SBN 213655)
(admitted in the Eastern District of Texas)
sean.murray@knobbe.com
JUSTIN J. GILLETT (CA SBN 298150)
(admitted in the Eastern District of Texas)
justin.gillett@knobbe.com
KIMBERLY A. KENNEDY (CA SBN 305499)
(admitted *pro hac vice*)

KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street, Fourteenth Floor
Irvine, California 92614
Telephone: (949) 760-0404
Facsimile: (949) 760-9502

ELIZABETH L. DERIEUX (TX SBN 05770585)
ederieux@capshawlaw.com
D. JEFFREY RAMBIN (TX SBN 00791478)
jrambin@capshawlaw.com
CAPSHAW DERIEUX, LLP
114 E. Commerce Avenue
Gladewater, Texas 75647
Telephone: (903) 236-9800
Facsimile: (903) 236-8787

## B.     STATEMENT OF JURISDICTION

This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331

and 1338(a) because this action arises under the patent laws of the United States, including 35

U.S.C. § 1 *et seq*. Personal jurisdiction is not disputed in this case.

## C.     NATURE OF ACTION

Plaintiff Whirlpool alleges that Defendant TST Water has infringed and continues to

infringe directly and/or indirectly claims 1-4, 10-15, 17-24, and 27-28 of U.S. Patent No.

7,000,894 (the '894 patent) by making, using, selling, and/or offering for sale in the United

States its "W-5" filters and other filters (collectively "W-5 filters" or "accused products") that

are designed to fit in place of Whirlpool's Filter 3 filter.

Whirlpool alleges that TST Water directly infringes claims 1-4, 10-15, 17-24, and 27-28,

either literally, or in the alternative, under the doctrine of equivalents. Whirlpool alleges that

TST Water indirectly infringes claims 2, 3, and 28 by way of contributory and/or induced

infringement of the '894 patent.  TST Water had actual knowledge of the '894 patent no later

than 2012.

Whirlpool alleges that TST Water induces its customers to infringe the '894 patent by, among other things, (a) providing W-5 filters that fit in place of Whirlpool's Filter 3 filters, (b) guaranteeing that its W-5 filters will fit in place of Whirlpool's Filter 3 filters, (c) directing its customers through its advertising and labels to install its W-5 filters in place of Whirlpool's Filter 3 filters, and (c) providing installation and operational support for its W-5 filters. Whirlpool contends that TST Water engaged in these activities because it specifically intends that its customers install W-5 filters and thus directly infringe the '894 patent.

Whirlpool further alleges that TST Water contributorily infringes the '894 patent by offering to sell or selling within the United States the W-5 filters, which are a component of the patented machine, manufacture, combination or composition of the claims 2 and 3 of the '894 patent.  TST Water also offers to sell or sells within the United States the W-5 filters, which are a material or apparatus for use in practicing the patented process of claim 28.  The W-5 filters constitute a material part of the invention of the claims 2, 3, and 28 of the '894 patent.  TST Water knows that the W-5 filters are especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.

Whirlpool also alleges that TST Water's infringement is and has been willful.  Whirlpool alleges that TST Water's actions were egregious, willful, or wanton.

Whirlpool seeks lost profits and a reasonable royalty for TST Water's alleged infringement. Whirlpool also seeks a permanent injunction preventing TST Water and its officers, directors, agents, servants, employees, attorneys, licensees, successors, assigns, and those in active concert or participation with any of them, from engaging in infringing activities with respect to the '894 patent, including by making, selling, or offering for sale its W-5 filters.

Whirlpool also seeks enhanced treble damages under 35 U.S.C. § 284. Whirlpool seeks pre-judgment and post-judgment interest on damages awarded, supplemental damages for any continuing post-verdict infringement up until entry of judgment, its costs, expenses, and attorneys' fees under 35 U.S.C. § 285, and any other relief the Court deems appropriate. Whirlpool alleges that TST Water had constructive notice of the '894 patent through Whirlpool's marking of its Filter 1 and Filter 3 products.

TST Water alleges that it carefully designed the accused W-5 filter to not infringe the '894 patent.  TST Water therefore denies that the W-5 filter infringes any asserted claim of the '894 patent either literally or though the doctrine of equivalents. TST Water also denies that consumers directly infringe the '894 patent when they install TST-manufactured W-5 filters in their refrigerators, not only because the W-5 filter is not covered by an asserted claim, but also because consumers have an implied license to use the W-5 filter and because their use of the W-5 filter is protected by the doctrine of permissible repair.  Because consumers do not directly infringe the '894 patent, TST Water denies that it induces infringement by others or contributes to infringement of any claim of the '894 patent by others.

TST Water also alleges that the asserted claims of the '894 patent do not recite a patentable invention, but merely obvious variations on what others had done before.  TST Water therefore alleges that the asserted claims of the '894 patent are invalid under the doctrine of obviousness.

Because TST Water alleges that it carefully designed its W-5 filter to not infringe the '894 patent, TST Water denies Whirlpool's allegation that it willfully infringed the '894 patent. Finally, TST Water denies that it owes Whirlpool any damages or that Whirlpool is entitled to an

injunction.  TST Water disputes Whirlpool's claim to have properly marked its Filter-3 products with the patent number of the asserted '894 patent.

## D.      CONTENTIONS OF THE PARTIES

### 1.      Whirlpool's Statement of Its Contentions

By providing these Contentions, Whirlpool does not concede that all of these issues are appropriate for trial. In addition, Whirlpool does not waive any of its motions *in limine*.

1.      In this case, Whirlpool contends that TST Water is directly infringing claims 1-4, 10-15, 17-24, and 27-28 of the '894 patent under 35 U.S.C. §§ 281-285, either literally or, in the alternative, under the doctrine of equivalents, by making, using, offering for sale, and/or selling replacement water filters.

2.      Whirlpool contends that TST Water had notice of the '894 patent, including through Whirlpool's marking of Filter 1 and Filter 3 products, and actual knowledge of the '894 patent no later than 2012.

3.      Whirlpool also alleges that TST Water induces its customers to infringe, either literally or by equivalents, claims 2, 3,  and 28 of the '894 patent under 35 U.S.C. § 271 by, among other things, (a) providing W-5 filters that fit in place of Whirlpool's Filter 3 filters, (b) guaranteeing that its W-5 filters will fit in place of Whirlpool's Filter 3 filters, (c) directing its customers through its advertising and labels to install its W-5 filters in place of Whirlpool's Filter 3 filters, and (c) providing installation and operational support for its W-5 filters. Whirlpool contends that TST Water engaged in these activities because it intends that its customers install W-5 filters and thus directly infringe the '894 patent.

4.      Whirlpool further alleges that TST Water contributorily infringes claims 2, 3, and 28 of the '894 patent under 35 U.S.C. § 271.   TST Water offers to sell or sells within the United States the W-5 filters, which are a component of the patented machine, manufacture, combination

or composition of claims 2 and 3 of the '894 patent.  TST Water also offers to sell or sells within the United States the W-5 filters, which are a material or apparatus for use in practicing the patented process of claim 28.  The W-5 filters constitute a material part of the invention of claims 2, 3, and 28 of the '894 patent.  TST Water knows that the W-5 filters are especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use. W-5 filter users directly infringe claims 2, 3, and 28 either literally or by equivalents.

5.      Whirlpool also alleges that TST Water's infringement is and has been willful because, among other things, TST Water was aware of the '894 patent and copied Whirlpool's Filter 3 design.  Whirlpool contends that TST Water's actions were egregious, willful, or wanton.

6.      The application for the '894 patent was filed on April 25, 2003.

7.      Whirlpool contends that the '894 patent is entitled to a priority date no later than April 25, 2003.

8.      Whirlpool holds all right, title and interest to the '894 patent and has standing to bring this suit.

9.      Whirlpool possesses all rights of recovery under the '894 patent.

10.      Whirlpool contends that it has been damaged by TST Water's conduct and seeks pre-verdict, post-verdict, and post-judgment damages, and an accounting, if necessary, to compensate for the infringement by TST Water, but in no event less than a reasonable royalty, together with prejudgment and post-judgment interest and costs as fixed by the Court.

11.      Whirlpool contends that this case is exceptional and that Whirlpool is entitled to reasonable attorneys' fees and costs (and consultant fees and costs) pursuant to 35 U.S.C. § 285.

12.     Whirlpool requests that the Court award Whirlpool enhanced damages pursuant to 35 U.S.C. § 284, as well as supplemental damages for any continuing post-verdict infringement and an accounting for damages if necessary.

13.     Whirlpool denies all of TST Water's defenses and counterclaims and contends that the are without merit. This includes TST's Water's assertion of prosecution history estoppel, which Whirlpool believes is untimely.

14.     Whirlpool denies that TST Water is entitled to its costs and expenses, a declaration that this case is exceptional, or its attorneys' fees.

**2.      TST Water's Statement of Its Contentions**

By providing these contentions, TST Water does not concede that all of these issues are appropriate for trial.  Nor does TST Water waive any of its motions *in limine*.

1.     TST Water contends that it has not infringed, either directly or indirectly, literally or under the doctrine of equivalents, any valid claim of the '894 patent.

2.     TST Water contends that the W-5 does not fall within the scope of any asserted claim of the '894 patent.

3.     TST Water contends that Whirlpool is barred by prosecution history estoppel from asserting the doctrine of equivalents in connection with the protrusion limitations of the asserted claims.

4.     TST Water contends that consumers who use TST Water's W-5 filter in a Filter-3 refrigerator do not directly infringe the '894 patent because they have an implied license to use the replacement filter of their choice in their refrigerators.

5.     TST Water contends that consumers who use TST Water's W-5 filter in a Filter-3 refrigerator do not directly infringe the '894 patent because they are protected by the doctrine of permissible repair.

6.      TST Water contends that Whirlpool is equitably estopped from asserting that consumers directly infringe the '894 patent based on Whirlpool's communications with customers at the time they purchased Filter-3 compatible Whirlpool refrigerators.

7.      TST Water contends that, because consumers do not directly infringe the '894 patent by using a W-5 filter in their refrigerators, TST Water does not induce any infringement of the '894 patent or contribute to any infringement of the '894 patent.

8.      TST Water contends that it carefully designed the W-5 filter to not infringe the '894 patent, and therefore TST Water has not willfully infringed that patent.

9.      TST Water contends that the asserted claims of the '894 patent do not recite a patentable invention, but merely obvious variations on what had been done before.  The asserted claims are therefore invalid for obviousness under 35 U.S.C. § 103.

10.      TST Water contends that, because it has not infringed the '894 patent, and because the asserted claims of that patent are invalid, TST Water is not liable for any damages to Whirlpool.

11.      TST Water contends that Whirlpool has not properly marked its patented Filter-3 products and therefore is barred under 35 U.S.C. § 287 from recovering damages for the period before the filing of this lawsuit on September 15, 2015.

12.      TST Water contends that Whirlpool is not entitled to an injunction.

13.      TST Water contends that this case is exceptional and that TST Water is entitled to recover reasonable attorneys' fees and costs (and consultant fees and costs) pursuant to 35 U.S.C. § 285.

14.      TST Water denies that Whirlpool is entitled to its costs and expenses, a declaration that this case is exceptional, or its attorneys' fees.

**E.**     **STIPULATIONS AND UNCONTESTED FACTS**

    **1.**     **Parties' Statement of Uncontested Facts**

The parties agree to the following uncontested facts.

1.     This Court has subject matter jurisdiction over this case.

2.     This Court has personal jurisdiction over the parties.

3.     Whirlpool filed its Complaint against TST Water on September 15, 2015, styled *Whirlpool Corporation v. TST Water, LLC*, Marshall Division, Civil Action No. 2:15-cv-1528.

4.     Whirlpool is a corporation organized and existing under the laws of the state of Delaware, having its corporate offices and principal place of business at 2000 North M-63, Benton Harbor, Michigan.

5.     TST Water is a limited liability corporation organized and existing under the laws of the state of California, having its principal place of business at 42188 Rio Nedo, Temecula, California.

6.     The application for the '894 patent was filed on April 25, 2003.

7.     For purposes of this case, the '894 patent is entitled to a priority date of April 25, 2003.

8.     For purposes of this case, the '894 patent expires on November 19, 2023.

9.     For purposes of this case, Whirlpool does not dispute that the following references are prior to the invention of the '894 patent: U.S. Patent No. 3,399,776 to Knuth ("Knuth"), U.S. Patent No. 5,320,752 to Clack ("Clack"), U.S. Patent No. 5,094,365 to Dorfman ("Dorfman"), U.S. Patent No. 7,067,054 to Fritze ("Fritze '054"), Japanese Patent Publication No. 56-144891 ("JP '891"), and U.S. Patent No. 3,715,032 ("Nicko").

10.    The '894 patent issued on February 21, 2006 and is entitled "Fluidic Cartridges and End Pieces Thereof."

11.    On March 30, 2012, a third party, Swift Green Filters, Ltd., requested *ex parte* reexamination of the '894 patent.

12.    On March 3, 2014, the examiner issued an *ex parte* reexamination certificate for the '894 patent, which includes claims 1-28.

13.    The named inventors of the '894 patent are Judd Dylan Olson, David James Emmons, John Paul Boros, Donald Stephen Bretl, Alan Joseph Mitchell, and Todd L. Rose.

14.    Whirlpool and Proctor & Gamble Company jointly owned the '894 patent until 2007.

15.    Whirlpool currently holds all right, title and interest to the '894 patent and has standing to bring this suit.

16.    Whirlpool possesses all rights of recovery under the '894 patent.

17.    Whirlpool asserts claims 1-4, 10-15, 17-24, and 27-28 of the '894 patent in this case.

18.    Whirlpool's Filter 1 and Filter 3 products, including the EveryDrop and non-EveryDrop versions thereof, practice the asserted claims of the '894 patent.

19.    Whirlpool's Filter 3 filters are designed to fit in Filter 3 compatible Whirlpool refrigerators.

20.    The parties are not aware of any non-infringing alternative to the asserted claims of the '894 patent that is compatible with Whirlpool's Filter 3 refrigerators and is not currently produced by TST Water.

21.     As of June 2015, Whirlpool possessed, and possesses, both the manufacturing and marketing capacity to make the additional sales its claims it would have made but for TST Water's sale of the accused product.

22.     The date of the hypothetical negotiation is July 2015.

23.     Whirlpool's profit margin for the Filter 3 filter at the Home Depot was $16.89 in 2015 and $17.29 between January and August 2016.

24.     TST Water's profit margin for the HDX W-5 filters at the Home Depot was $3.35 between July and December 2015, and $3.94 between January and April 2016.

25.     The '894 patent does not generate convoyed sales.

26.     TST Water first became aware of the '894 patent in approximately 2010-2011.

27.     Michael Baird studied the '894 patent prior to launching the accused products.

28.     TST Water makes, uses, offers for sale, and sells the accused products in the United States.

29.     The accused products are designed to fit in Filter 3 compatible Whirlpool refrigerators.

30.     The accused products are advertised to fit in place of Whirlpool's Filter 3 filters.

31.     The accused products are guaranteed to fit in Filter 3 compatible Whirlpool refrigerators.

32.     The accused products (i.e., all of the models of TST Water's W-5 filter) all have the same design, structure and dimensions, and they are all produced according to a single set of engineering drawings. The various model numbers differ only in their labels, packaging and, in certain cases, the source of one or more component parts.

33.     Whirlpool launched its Filter 3 products in late 2003 or early 2004.

34.     Whirlpool launched its Filter 1 products in 2010.

35.     TST Water launched its W-5 filter in July of 2015.

**2.     Proposed Stipulations**

The parties agree to the following proposed stipulations.

1.     Whirlpool and TST Water filed a Joint Notice of Certain Agreements Regarding Motions *in Limine* (Dkt. No.101).

2.     Whirlpool and TST Water filed a Joint Stipulation and Notice of Withdrawal (Dkt. No. 108).

A testifying expert's draft reports, notes, outlines, and any other writings leading up to his or her final report(s) in this case are exempt from discovery. In addition, all communications with, and all materials generated by, a testifying expert with respect to his work are exempt from discovery unless relied upon by the expert in forming his opinions.  The expert must, however, produce his or her final report and all materials on which he or she relied.

3.     For purposes of this case only, a document is a true and authentic copy of what it purports to be if (a) the document was produced by a party to this case, and (b) the document was (i) authored or created by that party (or a related entity under common control) or (ii) appears to have been received by that party (or a related entity under common control) in the course of conducting its business. Moreover, such documents shall be presumed to be business records under Federal Rule of Evidence 803.

4.     Whirlpool will further narrow the asserted claims on or before February 20, 2017.

5.     The parties agree that their respective damages experts can introduce the financial information (i.e., sales and profitability documents) produced in this case and relied upon in that expert's report in lieu of calling a percipient witness with personal knowledge of those financial

documents.  Neither party will contest that such information is authentic and constitutes business records under Federal Rule of Evidence 803.

    6.    TST Water is withdrawing the following defenses:

        a.  Laches and/or acquiescence

        b.  Patent exhaustion

        c.  Damages are limited by 35 U.S.C. § 286

        d.  Written description

        e.  Lack of enablement

    7.    The parties agree to abide by the procedures set forth in the court's Standing Order Regarding Protection of Proprietary and/or Confidential Information to be Presented to the Court During Motion and Trial Practice dated June 1, 2016, and this case's Protective Order [Dkt. No. 26] to prevent public disclosure of documents containing information designated as Confidential or Attorneys' Eyes Only and/or testimony eliciting such information.

## F.    CONTESTED ISSUES OF FACT AND LAW

The parties identify the following issues that remain to be litigated. To the extent any issues of law discussed below is deemed to be an issue of fact, or any issue of fact deemed to be an issue of law, it is incorporated into the appropriate section. The parties reserve the right to identify additional factual or legal issues that may arise, including those issues raised in any motions *in limine*.

### 1.    Parties' Statement Regarding Issues to be Decided by the Jury

    1.    Whether Whirlpool has proved by a preponderance of the evidence that TST Water directly infringes any of the asserted claims of the '894 patent – claims 1-4, 10-15, 17-24, and 27-28 – either literally or under the doctrine of equivalents.

2.      Whether Whirlpool has proved by a preponderance of the evidence that TST Water contributorily infringes claims 2, 3, and 28 of the '894 patent.

3.      Whether Whirlpool has proved by a preponderance of the evidence that TST Water induces infringement of claims 2, 3, and 28 of the '894 patent.

4.      Whether TST Water has proven by clear and convincing evidence that the asserted claims of the '894 patent are obvious under 35 U.S.C. § 103 in view of TST Water's prior art references.

5.      Whether Whirlpool has proven by a preponderance of the evidence that any infringement by TST Water has been willful.

6.      Whether Whirlpool has proved by a preponderance of the evidence that it properly marked its patented Filter-3 products pursuant 35 U.S.C. § 287.

7.      Whether Whirlpool is entitled to damages to compensate for TST Water's alleged infringement, and, if so, the dollar amount of damages adequate to compensate for the infringement of the patent-in-suit, but in no event less than a reasonable royalty.

**2.      TST Water's Statement Regarding Additional Issues to be Decided by the Jury**

1.      Whether TST Water has proved by a preponderance of the evidence that consumers who use TST Water's W-5 filter in a Filter-3 refrigerator do not directly infringe the '894 patent because they have an implied license to use the replacement filter of their choice in their refrigerators.

2.      Whether TST Water has proved by a preponderance of the evidence that consumers who use TST Water's W-5 filter in a Filter-3 refrigerator do not directly infringe the '894 patent because they are protected by the doctrine of permissible repair.

3.      Whether Whirlpool has proved by a preponderance of the evidence that TST Water contributorily infringes claims 1, 4, 10-15, 17-24, and 27 of the '894 patent.

4.      Whether Whirlpool has proved by a preponderance of the evidence that TST Water induces infringement of claims 1, 4, 10-15, 17-24, and 27of the '894 patent.

### 3.      Parties' Statement Regarding Issues to be Decided by the Court

The parties contend that all equitable issues require determination by the Court, should not be submitted to the jury, and the jury should not be advised of the issues or evidence relating solely thereto.  Accordingly, the following issues require determination by the Court:

1.      Whether independent claim 1 requires both an end piece and a head assembly for infringement, and whether independent claim 4 requires both a cartridge and a head assembly for infringement.

2.      Whether TST Water has proved by a preponderance of the evidence that Whirlpool is equitably estopped from asserting that consumers directly infringe the '894 patent based on its communications with customers at the time they purchased Filter-3 compatible Whirlpool refrigerators.

3.      Whether Whirlpool is barred by prosecution history estoppel from asserting the doctrine of equivalents in connection with the protrusion limitations of the asserted claims.

4.      Whether Whirlpool is entitled to enhanced damages pursuant to 35 U.S.C. § 284, and, if so, the dollar amount of the enhancement.

5.      Whether Whirlpool has proved that this case is an exceptional case pursuant to 35 U.S.C. § 285 and whether Whirlpool is entitled to an award of attorneys' fees.

6.      Whether TST Water has proved that this case is an exceptional case pursuant to 35 U.S.C. § 285 and whether TST Water is entitled to an award of attorneys' fees.

7.      Whether TST Water shall be required to pay Whirlpool's costs of this action, including all disbursements.

8.      Whether Whirlpool shall be required to pay TST Water's costs of this action, including all disbursements.

9.      Whether Whirlpool is entitled to a permanent injunction against TST Water and, if so, what is the proper scope of the injunction.

10.     Whether Whirlpool is entitled to pre-verdict and post-verdict damages adequate to compensate for the alleged infringement of the patent-in-suit, and if so, the amount of that award.

11.     Whether any denial of a permanent injunction should be conditioned on payment of reasonable royalties for future infringement, and if so, the royalty amount set for future infringement and a means or mechanism to account for future royalty payments, including during any stay of an injunction pending appeal.

12.     Whether TST Water shall be required to pay pre-judgment and post-judgment interest on any damages award.

**4.      Whirlpool's Statement Regarding Additional Issues to be Decided by the Court**

1.      Whether TST Water has proved that consumers who use TST Water's W-5 filter in a Filter-3 refrigerator do not directly infringe the '894 patent because they have an implied license to use the replacement filter of their choice in their refrigerators.

2.      Whether TST Water has proved by a preponderance of the evidence that consumers who use TST Water's W-5 filter in a Filter-3 refrigerator do not directly infringe the '894 patent because they are protected by the doctrine of permissible repair.

**G.     LIST OF WITNESSES**

1. Whirlpool's Witness List is attached as Exhibit A.

2. TST Water's Witness List is attached as Exhibit B.

**H.     LIST OF EXHIBITS**

1. Whirlpool's Exhibit List is attached as Exhibit C.

2. TST Water's Exhibit List is attached as Exhibit D.

**I.     DEPOSITION DESIGNATIONS**

1. Whirlpool's deposition designations are attached as Exhibit E.

2. TST Water's deposition designations are attached as Exhibit F.

**J.     PROPOSED JURY INSTRUCTIONS AND VERDICT FORMS**

1. Attached as Exhibit G is a copy of the parties' proposed preliminary jury instructions.

2. Attached as Exhibit H is a copy of the parties' proposed final jury instructions.

3. Attached as Exhibit I is a copy of the parties' proposed verdict form.

These exhibits identify where the parties' proposals differ and are subject to the parties' objections noted within.

**K.     LIST OF ANY PENDING MOTIONS**

1. Whirlpool's motion to strike David Hanson's testimony, docket number 085, filed December 7, 2016, is pending.

2. Whirlpool and TST Water's motions *in limine*, as well as the parties' agreed upon motions *in limine*, docket numbers 100, 99, and 101, respectively, filed January 16, 2017, are pending.

3. The parties' joint motion to supplement the expert reports of Bruce McFarlane and Matthew Stein, docket number 106, filed January 30, 2017, is pending.

L.   **PROBABLE LENGTH OF TRIAL**

The parties believe that they should receive

- 30 minutes per side in *voir dire*;

- 60 minutes for opening statements;

- 60 minutes for closing argument; and

- 15 hours per side, excluding openings, closings, and *voir dire*.

The parties estimate that the trial will last 5 days.

M.   **MANAGEMENT CONFERENCE LIMITATIONS**

The parties propose the following trial management procedures:

1.      The parties are cooperating to decrease the number of exhibits on their respective

exhibit lists and will exchange amended exhibit lists and objections on dates to be agreed upon by

the parties.  The parties will also cooperate in amending their video deposition designations.

2.      When the case is assigned a final trial start date, the following notice procedures in

this section will apply, subject to any changes agreed to by both parties.

3.      The parties agree that the parties may use any photographs and/or video of

physical refrigerators that appear on the parties' exhibit list—even if those photographs and/or

video were not previously disclosed on the party's exhibit list.  Such photographs and/or video

will be treated as demonstratives and subject to the limitations in Paragraph 4 below.  The parties

agree to the authenticity of the photographed objects themselves, unless a party has objected to

the inclusion of the object on the opposing party's exhibit list.

4.      The parties will exchange demonstrative exhibits for use in direct examination, and

will make available for inspection all non-documentary demonstratives or live product

demonstrations for use in direct examination by 7:00 pm one night before their intended use. The

parties shall exchange objections to these demonstratives by 8:00 pm the night before their intended use. The parties will meet and confer to resolve objections by 9:00 pm. Demonstratives exchanged will not be used by the opposing party prior to being used by the disclosing party.

5.      The parties will exchange lists of the witnesses (both live witnesses and those called by deposition) they expect to call, in the order they will be called, as well as a list of exhibits they intend to use with each live witness by 7:00 pm two nights before the witness is called.  The lists shall indicate whether a witness will be called live or by deposition.  The parties shall exchange objections by 8:00 pm that night, and the parties will meet and confer to resolve objections by 9:00 pm.  Materials to be used solely for impeachment of a witness called by the other party need not be identified in advance.

6.      The parties agree that notice of a party's intended use of blowups (enlargements) of exhibits and of highlighting or "real-time" marking up of such exhibits need not be given and need not be exchanged, so long as the underlying exhibit is pre-admitted or the party has identified its intention to use the exhibit according to the preceding paragraph.

7.      For witnesses presented by deposition, twenty business days before the first day of trial, each party must disclose the specific deposition designations that it intends to play at trial (for purposes other than impeachment). Ten business days before the first day of trial, the opposing party must serve objections and counter-designations to the specific deposition designations identified. Five business days before the first day of trial, the party seeking to use the identified deposition designations must serve objections to the opposing party's counter-designations. Two days prior to the use of a deposition designation, the parties will conduct a meet and confer to attempt to resolve any remaining objections.  The offering party reserve the right to trim its designations so long as it provides the opposing party a list of the eliminated

passages by 7:00 p.m. the two nights before the witness will be called.  The opposing party will provide a list of any of its counter-designations that it wishes to eliminate by 9:00 p.m.

8.      Witnesses presented by video will be divided by the actual time for designations and counter-designations by each party.  For witnesses that both sides wish to present by deposition, however, video for that witness will be played only once, and the parties will each be charged half the time for any overlapping designations.

9.      The parties agree that any exhibit listed on a party's own exhibit list as to which no objection remains pending at the time of opening statements may be shown to the jury by that party during opening statements if the exhibit will be the subject of testimony and explained to the jury by a witness at trial.

10.      The parties shall deliver ten (10) juror notebooks to the Court no later than Friday, March 3, 2017 at 2:00 p.m. The notebooks should contain the following: 1) Witness pages: for each witness, a sheet of paper with the witness's name only, a head and shoulders photo of each witness, and ruled lines for juror notes; 2) a ruled 3-holed punched notepad; 3) copies of patent(s) in suit; 4) a claim construction chart with construed terms and the actual adopted constructions in a side-by-side chart format; and 5) a ballpoint pen (that does not click).

## N.    CERTIFICATIONS

The undersigned counsel for each of the parties in this action does hereby certify and acknowledge the following:

(1)      That full and complete disclosure has been made in accordance with the Federal Rules of Civil Procedure, the Local Rules, and the Court's orders;

(2)     That, subject to their objections, the parties have complied with discovery limitations set forth in the Federal Rules of Civil Procedure, the Local Rules, and the Court's orders. The parties have stipulated and moved this Court on various issues altering discovery limitations, which have all been approved by this Court:

(3)     That each exhibit in the List of Exhibits herein:

     (a)     is in existence;

     (b)     is numbered; and

     (c)     has been or will be disclosed and shown to opposing counsel.


Approved as to form and substance:

Attorneys for Plaintiff: _____

Attorneys for Defendant: _____


This Joint Pre-Trial Order is hereby approved this _____ day of February, 2017.


                 _____
                 United States District Judge
                 Respectfully submitted,

Dated: January 30, 2017      */s/ Melissa R. Smith* (with permission)
                 Melissa R. Smith
                 melissa@gillamsmithlaw.com
                 GILLAM & SMITH L.L.P.
                 303 South Washington Avenue
                 Marshall, TX 75670
                 Telephone: (903) 934-8450
                 Facsimile: (903) 934-9257

sf-3728084

MICHAEL A. JACOBS (CA SBN 111664)
(admitted in the Eastern District of Texas)
mjacobs@mofo.com
RICHARD S.J. HUNG (CA SBN 197425) (admitted in
the Eastern District of Texas)
rhung@mofo.com
BARBARA N. BARATH (CA SBN 268146)
(admitted in the Eastern District of Texas)
bbarath@mofo.com
CHRISTOPHER JAMESON KENDALL
(CA SBN 302683)
(admitted in the Eastern District of Texas)
ckendall@mofo.com
RACHEL S. DOLPHIN (CA SBN 305477)
(admitted in the Eastern District of Texas)
rdolphin@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California  94105-2482
Telephone: (415) 268-7000
Facsimile: (415) 268-7522

T. JOHN WARD, JR.
(TX State Bar No. 00794818)
jw@wsfirm.com
CLAIRE ABERNATHY HENRY
(TX State Bar No. 24053063)
claire@wsfirm.com
ANDREA FAIR
andrea@wsfirm.com
WARD, SMITH & HILL, PLLC
1507 Bill Owens Parkway
Longview, Texas 75604
Telephone: (903) 757-6400
Facsimile: (903) 757-2323

JEFFREY D. HARTY (IA AT0003357)
jeff.harty@nyemaster.com
DAVID T. BOWER (IA AT0009246)
dbower@nyemaster.com
NYEMASTER GOODE, P.C.
700 Walnut, Ste. 1600
Des Moines, IA  50309
Telephone:  (515) 283-5506
Facsimile:  (515) 283-3108

sf-3728084

*Attorneys for Plaintiff*
**WHIRLPOOL CORPORATION**


John B. Sganga, Jr. (CA SBN 116211)
john.sganga@knobbe.com
*(Admitted to practice in the Eastern District of Texas)*
Sean M. Murray (CA SBN 213655)
sean.murray@knobbe.com
*(Admitted to practice in the Eastern District of Texas)*
Justin J. Gillett (CA SBN 298150)
justin.gillett@knobbe.com
*(Admitted to practice in the Eastern District of Texas)*
Kim A. Kennedy (CA SBN 305499)
kim.kennedy@knobbe.com
*(Admitted Pro Hac Vice)*
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street, Fourteenth Floor
Irvine, CA 92614
Telephone: (949) 760-0404
Facsimile: (949) 760-9502


Elizabeth L. DeRieux
Texas Bar No. 05770585
ederieux@capshawlaw.com
D. Jeffrey Rambin
Texas Bar No. 00791478
jrambin@capshawlaw.com
CAPSHAW DERIEUX, LLP
114 E. Commerce Ave.
Gladewater, Texas 75647
Tel: (903) 236-9800
Fax: (903) 236-8787


*Attorneys for Defendant*
**TST Water WATER, LLC**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) this 30th day of January, 2017.

<u>*/s/ Melissa R. Smith*</u>
Melissa R. Smith