**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| WHIRLPOOL CORPORATION, | § | |
| | § | |
| *Plaintiff*, | § | Civil Action No. 2:15-CV-1528-JRG |
| v. | § | |
| | § | |
| TST WATER, LLC, | § | |
| | § | |
| *Defendant*. | § | |
| | § | |

[Note: The parties agreed to use the final jury instructions from *Core Wireless Licensing S.A.R.L v. LG Electronics, Inc.*, 2:14-cv-912, Dkt. No. 45  (E.D. Tex. Sep. 16, 2016) as the base for these instructions.  Where the parties do not agree, Whirlpool's proposals are in <mark>yellow</mark>, and TST Water's proposals are in <mark>blue</mark>.]

## AMENDED JOINT PROPOSED FINAL JURY INSTRUCTIONS

Ladies and Gentlemen of the jury, you've now heard the evidence in this case. I'll now instruct you on the law that you must apply.  Each of you are going to have a copy of these final jury instructions that I'm about to give to you orally. You'll have these when you retire to deliberate in the jury room. Accordingly, there is really no need for you to take notes on these instructions at this time, unless you particularly want to, but I want you to be aware, you'll each have a copy of these to review if you would like to once you retire to deliberate.

It's your duty to follow the law as I give it to you.  On the other hand, as I've said previously, you, the jury, are the sole judges of the facts.

Do not consider any statement that I made in the course of the trial or that I may make in these instructions as an indication that I have any opinion about the facts of this case.

You're about to hear closing arguments from the attorneys.  Statements and arguments of the attorneys are not evidence, and are not instructions on the law.  They're intended only to assist the jury in understanding the evidence and the parties' contentions.

A verdict form has been prepared for you. You'll take this form to the jury room, and when you've reached your unanimous agreement as to your verdict, you'll have your foreperson fill in the blanks in that form, date it, and sign it. Answer the questions in the verdict form from the facts as you find them to be. Do not decide who you think should win and then answer the questions to reach that result. Your answers and your verdict, I remind you, must be unanimous.

In determining whether any fact has been proved in this case, you may, unless otherwise instructed, consider the testimony of all the witnesses, regardless of who may have called them, and all the exhibits received into evidence, regardless of who may have produced or introduced them.

You, the jurors, are the sole judges of the credibility of all the witnesses and the weight and effect to give to all the evidence. By allowing testimony or other evidence to be introduced over the objection of an attorney, the Court did not indicate any opinion as to the weight or effect of that evidence.

As I've told you previously, the attorneys in this case are advocates for their competing clients, and they have a duty to object when they believe evidence is offered that should not be admitted under the rules of this Court. When the Court sustained an objection to a question addressed to a witness, you must disregard that question entirely, and you may not draw any inference from its wording or speculate about what the witness would have said if he or she had been permitted to answer the question. If, however, the objection was overruled, then you're to treat the answer to that question just as you would treat any other answer to any other question as

2

if the objection had not been made. At times during the course of the trial, it's been necessary for the Court to talk with the lawyers here at the bench and outside of your hearing or by calling a recess and talking to them when you were not in the courtroom. This happened because often during a trial, there are things that arise that do not involve the jury. You should not speculate, ladies and gentlemen, about what was said during those discussions that took place outside of your presence. There are two types of evidence that you should consider in properly finding the truth as to the facts in this case. One is direct evidence, such as the testimony of an eyewitness. The other is indirect or sometimes called circumstantial evidence; that is, the proof of a chain of circumstances that indicates the existence or non-existence of certain other facts. As a general rule, the law makes no distinction between direct or circumstantial evidence but simply requires that you find the facts in this case based on the evidence presented, both direct and circumstantial. The parties may have stipulated or agreed to some facts in the case. When the lawyers for both sides stipulate to the existence of a fact, you must, unless otherwise instructed, accept the stipulation as evidence and regard the facts as proven.

Certain testimony in this case has been presented to you through depositions. A deposition is the sworn recorded answers to questions asked to a witness in advance of a trial. If a witness cannot be here personally to testify in open court from the witness stand, then that witness's testimony may be presented under oath in the form of a deposition. Before the trial began, the lawyers for both sides in this case questioned these deposition witnesses under oath. A court reporter was present, and the deposition testimony was recorded at the deposition. Deposition testimony is entitled to the same consideration as testimony given by a witness in person from the witness stand. Accordingly, you should determine the credibility and importance

sf-3740432

of deposition testimony to the best of your ability just as if the witness had been present and testified in open court.

While you should consider only the evidence in this case, you are permitted, ladies and gentlemen, to draw such reasonable inferences from the testimony and exhibits that you feel are justified in the light of common experience. In other words, you may make deductions and reach conclusions that reason and common sense leads you to draw from the facts that have been established by the testimony and evidence in this case. However, you should not base your decision on any evidence not presented by the parties during the case, including your own personal experiences with any particular refrigerator or water filter.

Unless I instruct you otherwise, you may properly determine the testimony of a single witness is sufficient to prove any fact, even if a greater number of witnesses may have testified to the contrary, if, after considering all of the evidence, you believe that single witness.

Now, when knowledge of a technical subject matter may be helpful to the jury, a person who has special training and experience in that technical field, which we call an expert witness, is permitted to state his or her opinions on those technical matters. However, you're not required to accept those opinions. As with any other witness, ladies and gentlemen, it is solely up to you to decide whether to rely on such expert opinions or not.

## I.     Burdens of Proof

In any legal action, facts must be proved by a required amount of evidence known as the "burden of proof." The burden of proof in this case is on Whirlpool for some issues and it is on TST Water for other issues.

There are two burdens of proof that you will apply in this case: "preponderance of the evidence" and "clear and convincing evidence."

4

The Plaintiff, Whirlpool, has the burden of proving patent infringement by a preponderance of the evidence. The Plaintiff, Whirlpool, also has the burden of proving willful patent infringement by a preponderance of the evidence. The Plaintiff, Whirlpool, also has the burden of proving damages for patent infringement by a preponderance of the evidence. The Defendant, TST Water, has the burden of proving the defense of implied license.[1]   The Defendant, TST Water, also has the burden of proving the defense of permissible repair by a preponderance of the evidence.[2] A preponderance of the evidence means evidence that persuades you that a claim is more probably true than not true. Sometimes this is talked about as being the greater weight and degree of credible testimony.

The Defendant, TST Water, has the burden of proving patent invalidity by clear and convincing evidence. Clear and convincing evidence means evidence that produces in your mind an abiding conviction that the truth of the party's factual contentions are highly probable. Although proof to an absolute certainty is not required, the clear and convincing evidence standard requires a greater degree of persuasion than is necessary for the preponderance of the evidence standard. If proof establishes in your mind an abiding conviction in the truth of the matter, then the clear and convincing evidence standard has been met.

---

[1] There appears to be a split in the District as to the evidentiary standard.  *Compare Genband US LLC v. Metaswitch Networks,* No. 14-cv-33-JRG, 2016 U.S. Dist. LEXIS 134659, at *97 (E.D. Tex. Sept. 29, 2016)  (referring to clear and convincing evidence standard) *with Realtime Data, LLC v. T-Mobile USA, Inc.,* 936 F. Supp. 2d 795, 800 (E.D. Tex. 2013) (Clark, J.) (referring to preponderance standard).  The parties are happy to discuss the issue with the Court.

[2] Whirlpool contends that implied license and permissible repair are both legal questions that should not be submitted to the jury.  *See* Sections VII and VIII below. If the court submits the issues of implied license and permissible repair to the jury, Whirlpool proposes these additional instructions.

sf-3740432

These standards are different from what you may have heard about in criminal proceedings where a fact must be proven beyond a reasonable doubt. On a scale of these various standards of proof, as you move from preponderance of the evidence, where the proof need only be sufficient to tip the scale in favor of the party proving the fact, to beyond a reasonable doubt where the fact must be proven to a very high degree of certainty, you may think of clear and convincing evidence as being between those two standards.

In determining whether any fact has been proven by a preponderance of the evidence or by clear and convincing evidence, you may, unless otherwise instructed, consider the stipulations, the testimony of all the witnesses, regardless of who called them, and all the exhibits admitted into evidence, regardless of who may have produced them.

## II.      Summary of Arguments

As I did at the start of the case, I will first give you a summary of each side's contentions in this case. I'll then provide you with detailed instructions on what each side must prove to win on each of its contentions.

Plaintiff Whirlpool alleges that Defendant TST Water has infringed and continues to infringe directly and/or indirectly claims 1-4, 10-15, 17-24, and 27-28 of U.S. Patent No. 7,000,894 (the '894 patent) by making, using, selling, and/or offering for sale in the United States its "W-5" filters and other filters (collectively "W-5 filters" or "accused products") that are designed to fit in place of Whirlpool's Filter 3 filter.

Whirlpool alleges that TST Water directly infringes claims 1-4, 10-15, 17-24, and 27-28, either literally, or in the alternative, under the doctrine of equivalents.

Whirlpool alleges that TST Water indirectly infringes [**TST Water proposal**: the asserted][3] claims [**Whirlpool proposal**: 2, 3, and 28][4] by way of contributory and/or induced infringement of the '894 patent.

Whirlpool alleges that TST Water induces its customers to infringe the '894 patent [**Whirlpool Proposal**: by, among other things, (a) providing W-5 filters that fit in place of Whirlpool's Filter 3 filters, (b) guaranteeing that its W-5 filters will fit in place of Whirlpool's Filter 3 filters, (c) directing its customers through its advertising and labels to install its W-5 filters in place of Whirlpool's Filter 3 filters, and (d) providing installation and operational support for its W-5 filters. Whirlpool contends that TST Water engaged in these activities][5][6] because it specifically intends that its customers install W-5 filters and thus [**TST Water proposal**:, Whirlpool alleges], directly infringe the '894 patent.

[**Whirlpool Proposal**: Whirlpool further alleges that TST Water contributorily infringes the '894 patent. Whirlpool further alleges that TST Water offers to sell or sells within the United

---

[3] TST Water has asserted a declaratory judgment counterclaim of non-infringement for every claim in the '894 patent. As explained in TST Water's opposition to Whirlpool's Motion in Limine No. 6, TST Water contends that all of the claims are directed to the combination of a refrigerator head assembly and a water filter cartridge. Because TST Water does not sell refrigerator head assemblies, TST Water contends that it's sales of filters cannot be acts of direct infringement, but at most indirect infringement when the consumer uses the filter with the refrigerator. Therefore TST Water is entitled to have the jury resolve TST Water's defenses of implied license and permissible repair as to all of the asserted claims, not just the ones that Whirlpool agrees require the combination of a refrigerator and a head assembly.

[4] TST's position squarely contradicts the Court's claim construction order, in which it held that a head assembly is not required to infringe independent claims 1 and 4 and their dependent claims. (Dkt. No. 59 at 16 ("Defendant has not demonstrated that the phrase "for operatively engaging" should be interpreted so as to require actual engagement.").)

[5] Whirlpool believes that the jury will benefit from understanding the actions that Whirlpool alleges induce infringement. TST Water's formulation suggests that Whirlpool's allegation is limited to TST Water's intent that customers install the accused filters.

[6] TST Water objects to Whirlpool's proposal because it selectively presents certain facts to the jury and characterizes those facts according to Whirlpool's interpretation.

sf-3740432

States the W-5 filters, which are a component of the patented machine, manufacture, combination or composition of claims 2 and 3.  TST Water also offers to sell or sells within the United States the W-5 filters, which are a material or apparatus for use in practicing the patented process of claim 28.  The W-5 filters constitute a material part of the invention of claims 2, 3, and 28.  TST Water knows that the W-5 filters are especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.][78  [**TST Proposal:**  Whirlpool further alleges that TST Water contributorily infringes the '894 patent, because TST Water offers to sell or sells within the United States the W-5 filters, which Whirlpool alleges to be a material part of the patented invention.]

Whirlpool also alleges that TST Water's infringement is and has been willful [**Whirlpool Proposal:** because, among other things, TST Water was aware of the '894 patent and copied Whirlpool's Filter 3 design.].[9]  Whirlpool seeks lost profits and a reasonable royalty for TST Water's alleged infringement.

TST Water denies that the W-5 filter infringes any asserted claim of the '894 patent either literally or though the doctrine of equivalents. TST Water also denies that consumers directly infringe the '894 patent when they install TST Water-manufactured W-5 filters in their refrigerators. [**TST Water Proposal:**  TST Water further alleges that consumers do not directly infringe for two additional reasons: (1) because consumers have an implied license to use the W-

---

[7] 35 U.S.C. § 271. Whirlpool's characterization of its contributory infringement allegations mirrors the statute's requirements.

[8] TST Water objects to Whirlpool's proposal because it improperly presents Whirlpool's contentions, vigorously disputed by TST Water, as facts to be stated by the Court.

[9] TST Water objects to Whirlpool's proposal because it improperly presents Whirlpool's contention that TST Water copied Whirlpool's product, a contention vigorously disputed by TST Water, as a fact to be stated by the Court.

sf-3740432

5 filter; and (2) because consumers use of the W-5 filter is a permissible repair of the consumers' refrigerator.]**10 11** TST Water contends that, because consumers do not directly infringe, TST Water is not inducing infringement or contributing to infringement by others. TST Water further denies Whirlpool's allegation that TST Water willfully infringed the '894 patent.

Separately, TST Water also contends that the asserted claims of Whirlpool's patent are invalid. TST Water contends that all asserted claims are obvious in view of prior art that existed before Whirlpool's alleged inventions and therefore that '894 patent's asserted claims are invalid. **[TST Proposal:** Invalidity is a defense to infringement.][12].

TST Water denies that it owes Whirlpool any damages.  TST Water further contends that any damages owed Whirlpool would be limited by Whirlpool's failure to mark its Filter-3 products with the patent number of the asserted '894 patent.

## III.    Description of Claims & Limitations

Invalidity and infringement are separate and distinct issues. Your job is to decide whether the asserted claims of the asserted patent have been infringed and whether any of the asserted claims of that patent are invalid. If you decide that any claim of a patent has been infringed, and is not invalid, then need to decide whether TST Water's infringement has been willful and the amount of money damages to be awarded to Whirlpool as compensation for the infringement.

---

[10] Whirlpool contends that implied license and permissible repair are both legal questions that should and need not be submitted to the jury. *See* Sections VII and VIII below and cases and discussion therein.

[11] The jury must be informed that TST Water has raised defenses of implied license and permissible repair because, like obviousness, these legal conclusions are based on underlying factual determinations that the jury must decide.  *See Wang Labs., Inc. v. Mitsubishi Elecs. Am., Inc.*, 103 F.3d 1571, 1581 (Fed. Cir. 1997) (implied license); *and Fuji Photo Film Co. v. Int'l Trade Comm'n*, 474 F.3d 1281 (Fed. Cir. 2007) (permissible repair).

[12] Whirlpool objects to this statement as a statement of law—not a contention of the parties appropriate for inclusion in this section.

sf-3740432

Before you can decide many of the issues in this case, you'll need to understand the role of patent claims. The patent claims are the numbered sentences at the end of the patent. The claims are important because it's the words of the claims themselves that define what a patent covers. The figures and the text in the rest of the patent provide a description and/or examples of the invention, and they provide context for the claims, but it is the claims that define the breadth of the patent's coverage. Each claim is effectively treated as if it were a separate patent, and each claim may cover more or cover less than another claim. Therefore, what a patent covers collectively depends on what each of its claims cover.

Claims may describe apparatuses, devices, or products such as machines. I will call such claims apparatus claims.  Claims also may describe methods for using a product. I will call such claims method claims. In this case, Whirlpool has asserted apparatus claims as well as method claims.

You need to first understand what each claim covers in order to decide whether or not there is infringement of that claim and to decide whether or not that claim is invalid. The law says it's my role to define the terms of the claims, and it's your role to apply my definitions to the issues you're asked to decide in this case.  Therefore, as I explained to you at the beginning of the case, I have already determined the meaning of certain claim limitations and have provided these definitions to you in your juror notebooks.  You must accept my definitions of those words in the claims as being correct. It's your job to take those definitions that I have supplied and apply them to the issues that you're asked to decide, including the issues of infringement and invalidity. You should disregard any evidence presented at trial which contradicts or is inconsistent with the constructions and definitions that I have given you.  For claim limitations that I have not construed, that is, have not interpreted or defined, you are to use

10

the plain and ordinary meaning of the limitations as understood by one of ordinary skill in the art, which is to say, in the field of the technology of the patent, at the time of the alleged invention.[13] The meaning of the words of the patent claims must be the same when deciding both infringement and validity.

You have been provided with copies of the asserted patent, which are inside your juror notebooks, and you may use them in your deliberations.

I'll now explain to you how a claim defines what is covered. A claim sets forth in words a set of requirements. Each claim sets forth its requirements in a single sentence. If a device satisfies each of these requirements in that sentence, then it is covered by and infringes the claim.

There can be several claims in a patent. One claim may be narrower or broader than another claim by setting forth more or fewer requirements. The coverage of a patent is assessed on a claim-by-claim basis. In patent law, the requirements of a claim are often referred to as claim elements or as claim limitations. When a product meets all of the requirements of a claim, the claim is said to cover that product, and that product is said to fall within the scope of that claim. In other words, ladies and gentlemen, a claim covers a product when each of the claim elements or limitations is present in that product. If a product is missing even one limitation or element of a claim, the product is not covered by the claim. If a product is not covered by the claim, that product does not infringe the claim.

The beginning portion, or preamble, of a claim often uses the word "comprising." The word "comprising," when used in the preamble, means "including but not limited to" or "containing but not limited to." When "comprising" is used in the preamble, if you decide that an

---

[13] Transcript of Jury Trial, *ContentGuard Holdings, Inc. v. Samsung Elecs. Co. Ltd.*, 2:14-cv-00061 (E.D. Tex. Dec. 4, 2015), Dkt. No. 445.

accused product includes all of the requirements of that claim, the claim is infringed. This is true even if the accused instrumentality contains additional elements.

For example, a claim to a table comprising a tabletop, legs, and glue would be infringed by a table that includes a tabletop, legs, and glue even if the table also includes wheels to be placed on the ends of the legs.

A patent owner has the right to stop others from using the invention covered by its patent claims in the United States during the life of the patent. If any person makes, uses, sells, or offers to sell within the United States or imports into the United States what is covered by patent claims without the patent owner's permission, that person is said to infringe the patent.

## IV.     Infringement Generally[14]

In reaching your decision on infringement, keep in mind that only the claims of a patent can be infringed. You must compare the asserted patent claims, as I have defined each of them, to the accused products, and determine whether or not there is infringement. You should not compare the accused products with any specific example set out in the patent or with the patent holder's commercial products or with the prior art in reaching your decision on infringement. In deciding infringement, ladies and gentlemen, the only correct comparison is between the accused products and the limitations of the claims as the Court has construed the claims previously.

You must reach your decision as to each assertion of infringement based on my instructions about the meaning and scope of the claims, the legal requirements for infringement, and the evidence presented to you by the parties. Also, the issue of infringement is assessed on a claim-by-claim basis.

---

[14] Transcript of Jury Trial, *ContentGuard Holdings, Inc. v. Samsung Elecs. Co. Ltd.*, 2:14-cv-00061 (E.D. Tex. Dec. 4, 2015), Dkt. No. 445.

There may be infringement as to one claim even if there is no infringement as to other claims.[15]

In this case, there are two possible ways that a claim may be infringed:  (1) direct infringement and (2) indirect infringement. [**Whirlpool Proposal**: The Patent and Trademark Office is not involved in deciding infringement.[16] The fact that TST Water has applied for and/or received a patent relating to the accused products does not create a presumption of non-infringement or negate infringement.[17]][18] [**TST Water's Proposal:** The fact that TST Water has applied for and/or received a patent relating to the accused products is not relevant to literal infringement, but may be relevant to the doctrine of equivalents, which I will address more later.][19]

## V.      Direct Infringement

---

[15] *Id.*

[16] Federal Judicial Center, "The Patent Process – An Overview for Jurors" (Nov. 2013) ("But the PTO and its Examiners have no jurisdiction over questions relating to infringement of patents.").

[17] *Sanitary Refrigerator Co. v. Winters,* 280 U.S. 30, 43 (1929) ("Nor is the infringement avoided . . . by any presumptive validity that may attach to the Schrader patent by reason of its issuance of the Winters and Crampton patent."); *Nat'l Presto Indus., Inc. v. West Bend Co.,* 76 F.3d 1185, 1191 (Fed. Cir. 1996) ("The grant of a separate patent on the accused device does not automatically avoid infringement, either literally or by equivalents."); *Atlas Powder Co. v. E.I. du Pont De Nemours & Co.*, 750 F.2d 1569, 1581 (Fed. Cir. 1984) ("Patentable difference does not of itself tend to negative infringement.") (quoting *Herman v. Youngstown Car Mfg. co.*, 191 F. 579, 585 (6th Cir. 1911)).

[18] Whirlpool's proposed instruction incorrectly suggests that TST Water's patents are not relevant to infringement.  This is wrong because a defendant's patents are relevant to the doctrine of equivalents. *See Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 493 F.3d 1368, 1379–80 (Fed. Cir. 2007) ("when a device that incorporates the purported equivalent is in fact the subject of a separate patent, a finding of equivalency, while perhaps not necessarily legally foreclosed, is at least considerably more difficult to make out.").

[19] The doctrine of prosecution history estoppel does not warrant TST's instruction. The doctrine is undisputedly a legal question for the Court and, as discussed below, does not apply here.  TST does not dispute that the U.S. Patent Office is not tasked with deciding whether a party infringes (or not).

In order to prove direct infringement of a patent claim, Whirlpool must show by a preponderance of the evidence that the accused product includes each and every requirement or limitation of the claim. In determining whether an accused product directly infringes a patent claim in this case, you must compare the accused product with each and every one of the requirements or limitations of that claim to determine whether the accused product contains each and every requirement or limitation recited in the claim.

A patent can be directly infringed even if the alleged infringer did not have knowledge of the patent and without the infringer knowing that what it was doing is infringement of the claim. A patent may also be directly infringed even though the accused infringer believes in good faith that what it's doing is not infringement of the patent.[20]

A claim requirement is literally present if it exists in an accused product or method just as it is described in the claim language, either as I have explained the language to you or, if I did not explain it, as it would be understood by its plain and ordinary meaning to one of skill in the art. If an accused product omits any requirement recited in a claim, then you must find that that particular product or method does not infringe that claim.

If a person makes, uses, sells, or offers to sell within the United States a product, or practices a method that does not meet all of the requirements of a claim and thus does not literally infringe that claim, there can still be direct infringement if that product or method satisfies that claim under the doctrine of equivalents.

Under the doctrine of equivalents, a product or method infringes a claim if the accused product or method performs steps or contains elements corresponding to each and every

---

[20] Transcript of Jury Trial, *ContentGuard Holdings, Inc. v. Samsung Elecs. Co. Ltd.*, 2:14-cv-00061 (E.D. Tex. Dec. 4, 2015), Dkt. No. 445.

requirement of the claim that is equivalent to, even though not literally met by, the accused product or method.

You may find that a step or element is equivalent to a requirement of a claim that is not literally met if a person having ordinary skill in the field of the technology of the patent would have considered the differences between them to be "insubstantial" or would have found that TST Water's action or structure: (1) performs substantially the same function; (2) in substantially the same way (3) to achieve substantially the same result as the requirement of the claim.  In order to prove infringement by "equivalents," Whirlpool must prove the equivalency of each claim element by a preponderance of the evidence.

[**TST Water proposal**: You may not determine that an alternative aspect of an accused product or method is equivalent to an unmet requirement of a claim if a finding of infringement under the doctrine of equivalents would effectively eliminate that requirement.[21] [22]  Specifically, the alleged equivalent cannot eliminate or ignore an element or requirement of the claim.[23] [24]

---

[21] This Court gave this instruction in *SSL Services, LLC v. Citrix Systems, Inc. et al.*, No. 2:08-cv-00158-JRG, Dkt. No. 256 (E.D. Tex. June 18, 2012) (Gilstrap, J.). The parties in that case based that instruction on the Federal Circuit Bar Association model.  *SSL Services*, No. 2:08-cv-158-JRG, Dkt. No. 33 at 26.  This proposed instruction is necessary to carry out the Supreme Court's directive to "focus on individual elements" and exercise "a special vigilance against allowing the concept of equivalence to eliminate completely any such elements."  *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 29, 40 (1997) ("It is important to ensure that the application of the doctrine, even as to an individual element, is not allowed such broad play as to effectively eliminate that element in its entirety.").  The instruction does not indicate that there is an exception to the doctrine of equivalents, as Whirlpool argues.

[22] Whirlpool objects to this deviation from the agreed default instructions as unnecessary, likely to confuse the jury, and incorrect. The parties stipulated to this instruction in *SSL Services*. (*See* Dkt. No. 233 at 26.) But the Federal Circuit has clarified that "[v]itiation is not an exception to the doctrine of equivalents, but instead a legal determination that 'the evidence is such that no reasonable jury could determine two elements to be equivalent.'" *Deere & Co. v. Bush Hog, LLC*, 703 F.3d 1349, 1356 (Fed. Cir. 2012).  TST's instruction also is duplicative, as the instruction from the agreed default set already refers to "each claim element."

[23] *See TST Water's last footnote.*

sf-3740432

Claims that contain detailed recitation of structure or otherwise use narrow claim language may be accorded little, if any, range of equivalents.[25][26]   The public is entitled to rely on

---

[24] Whirlpool objects to this deviation from the agreed default instructions as unnecessary, likely to confuse the jury, and incorrect.  The parties stipulated to this instruction in *SSL Services.*  (*See* Dkt. No. 233 at 26.)  But the Federal Circuit has clarified that "[v]itiation is not an exception to the doctrine of equivalents, but instead a legal determination that 'the evidence is such that no reasonable jury could determine two elements to be equivalent.'"  *Deere,* 703 F.3d at 1356.

[25] This instruction is necessary to inform the jury of the well-settled precedent that if claims containing detailed recitations of structure or otherwise using narrow claim language are entitled to a correspondingly narrow scope of equivalents, if any.  In *Bicon, Inc. v. Straumann Co.*, the Federal Circuit upheld the district court's finding that an accused concave structure was not equivalent to a claimed convex structure on an abutment where the asserted claim contained a detailed recitation of the shape of the abutment.  441 F.3d 945, 955-56 (Fed. Cir. 2006).  In support of its decision, the affirming panel stated, "A claim that contains a detailed recitation of structure is properly accorded correspondingly limited recourse to the doctrine of equivalents." *Id.* at 955.  The panel then bolstered its opinion by stating that principle has special application in cases of specific exclusion.  *Id.*  Similarly, in *Wm. Wrigley Jr. Co. v. Cadbury Adams USA LLC*, the Federal Circuit upheld the district court's finding that accused carboxamide WS-23 was not equivalent to claimed carboxamide WS-3 where the inventors "drafted the claims of the [asserted] patent narrowly to recite certain N-substituted-p-menthane carboxamides, not a broader category of carboxamides that would include WS–23."  683 F.3d 1356, 1365-66 (Fed. Cir. 2012); *see also Advanced Steel Recovery, LLC v. X-Body Equip., Inc.*, 808 F.3d 1313, 1319-21 (Fed. Cir. 2015) (finding an accused connection point 35% down the relevant length was not equivalent to a claimed connection point at the proximate end, in view of "the narrowness of the asserted claims" reciting "'a container packer including a proximate end, a distal end with an opening, opposite sidewalls, a floor, and an interior'"); *Tanabe Seiyaku Co. v. U.S. Int'l Trade Comm'n*, 109 F.3d 726, 732 (Fed. Cir. 1997) ("The sharply restricted nature of the claims has much to do with the scope we accord to the doctrine of equivalents.").

There is also nothing in TST Water's proposed instruction that assumes any specific claim is narrow; this instruction merely tells the jury how to handle a narrow claim.

[26] Whirlpool objects to this deviation from the agreed default instructions as duplicative, likely to confuse the jury, and as attempting to predetermine the ultimate issue by assuming that the claims are narrow. TST's cases involved claim language that, on its face, excluded the alleged equivalent or an alleged equivalent that would vitiate the limitation. *See Bicon,* 441 F.3d at 955 ("That principle has special application in a case such as this one, where the claim . . . clearly excludes distinctly different and even opposite shapes."); *Tanabe,* 109 F.3d at 732 ("This specific claim language would suggest to a person skilled in the art that ketones other than acetone may not be useful . . . ."); *Wm. Wrigley Jr.,* 683 F.3d at 1366 (inventors "were on notice of the potential interchangeability of WS-23 and WS-3, yet they drafted the claims . . . narrowly to recite [the narrower W-3 category]"); *Moore,* 229 F.3d at 1106 ("[T]o allow what is undisputedly a minority . . . to be equivalent to a majority would vitiate the requirement. . . ."); *Advanced Recovery,* 808 F.3d at 1321 (referring to district court's reliance on "vitiation"

16

structural and functional limitations in avoiding infringement.[27][28]  Designing a device to not infringe a patent is known as "designing around" the patent.[29]  Designing around patents is, in fact, one of the ways in which the patent system works to the advantage of the public in promoting progress in the useful arts, its constitutional purpose.[30][31]

When determining whether the difference between a claim element and its alleged equivalent in the accused device are substantial, you may consider whether the accused device is

---

doctrine in affirming summary judgment). Moreover, TST"s instruction presumes or incorrectly implies that the claim language that the "protrusion extend[s]" is narrowly claimed. Finally, TST Water's references to the use of "detailed recitation of structure" or "narrow claim language" risk presenting claim construction issues to the jury.

[27] *Athletic Alternatives, Inc. v. Prince Mfg., Inc.*, 73 F.3d 1573, 1582 (Fed. Cir. 1996) ("the doctrine of equivalents is not a license to ignore or 'erase ... structural and functional limitations of the claim,' limitations 'on which the public is entitled to rely in avoiding infringement.'"); *Sage Prod., Inc. v. Devon Indus., Inc.*, 126 F.3d 1420, 1424–25 (Fed. Cir. 1997) ("[A]s between the patentee who had a clear opportunity to negotiate broader claims but did not do so, and the public at large, it is the patentee who must bear the cost of its failure to seek protection for this foreseeable alteration of its claimed structure."); *Freedman Seating Co. v. Am. Seating Co.*, 420 F.3d 1350, 1362 (Fed. Cir. 2005) (applying *Sage v. Devon*).

This instruction accurately states the law and is necessary because Whirlpool relies on the fact that TST Water knew of and studied the patent to prove willfulness.  The jury must understand that a defendant may properly and in good faith design around a patent by eliminating a structural or functional limitation.

[28] Whirlpool objects to this deviation from the agreed default instructions as unsupported attorney argument that is intended to validate TST Water's expected "designing around" trial theme.  Moreover, TST Water's focus on willfulness and intent issues are not pertinent to the discussion of equivalence.  *See Warner-Jenkinson Co. v. Hilton-Davis Chem. Co.*, 520 U.S. 17, 36 (1997) ("intent plays no role in the application of the doctrine of equivalents").

[29] Whirlpool objects to this deviation from the agreed default instructions as unnecessary attorney argument.

[30] *See* TST Water's last footnote.

[31] Whirlpool objects to this deviation from the agreed default instructions as unnecessary and potentially misleading. First, it is well established that an attempted designaround may nonetheless infringe. *See, e.g., K-Tec, Inc. v. Vita-Mix Corp.*, 696 F.3d 1364, 1379 (Fed. Cir. 2012) (affirming summary judgment that attempted designaround infringed). Second, "intent plays no role in the application of the doctrine of equivalents." *Warner-Jenkinson*, 520 U.S. at 36.

the subject of a separate patent.[32][33] The nonobviousness of the accused device, evidenced by the grant of a United States patent, is relevant to the issue of whether the change therein is substantial.[34][35]

**[TST Water's proposed instruction in the event the Court finds prosecution history estoppel with respect to the "protrusion" limitations:** In this case, I have determined, as a matter of law, that the doctrine of equivalents cannot be applied to <u>certain</u> elements of the

---

[32] *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 493 F.3d 1368, 1379–80 (Fed. Cir. 2007) ("when a device that incorporates the purported equivalent is in fact the subject of a separate patent, a finding of equivalency, while perhaps not necessarily legally foreclosed, is at least considerably more difficult to make out."). *See also* TST Water's opposition to Whirlpool's Motion *in Limine* No. 13.
The construction accurately states the law and contains no suggestion that a defendant's patents create a "presumption of non-infringement" or negate infringement.

[33] Whirlpool objects to this deviation from the agreed default instructions as misleading and attempting to predetermine the ultimate issue. The fact that TST Water has applied for or received patents on the accused products does not create a presumption of non-infringement or negate infringement. *See Sanitary*, 280 U.S. at 43 ("Nor is the infringement avoided . . . by any presumptive validity that may attach to the Schrader patent by reason of its issuance of the Winters and Crampton patent."); *Nat'l Presto*, 76 F.3d at 1191 ("The grant of a separate patent on the accused device does not automatically avoid infringement, either literally or by equivalents."); *Atlas Powder*, 750 F.2d at 1581 ("Patentable difference does not of itself tend to negative infringement.") (quoting *Herman v. Youngstown Car Mfg. co.*, 191 F. 579, 585 (6th Cir. 1911). Moreover, TST assumes without support that the issuance of its issued *design patent* is relevant to the non-obviousness or equivalence of Whirlpool's *utility patent.* Design patents relate to the ornamental features of a product, however, and the test for infringement is fundamentally different. *See Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 670, 680-681 (Fed. Cir. 2008) (*en banc*) (explaining that infringement test for design patents is the "ordinary observer" test, and noting that design patents cover features that are "ornamental" and not "purely functional"). TST Water makes no attempt to explain the relevance of the grant of a United States design patent to infringement of a United States utility patent.

[34] Zygo Corp. v. Wyko Corp., 79 F.3d 1563, 1570 (Fed. Cir. 1996) ("The nonobviousness of the accused device, evidenced by the grant of a United States patent, is relevant to the issue of whether the change therein is substantial.").
The construction accurately states the law and contains no suggestion that a defendant's patents create a "presumption of non-infringement" or negate infringement.

[35] As discussed above, Whirlpool objects to this deviation from the agreed default instructions as duplicative, misleading, and attempting to predetermine the ultimate issue.

18

asserted claims.[36][37]   I am instructing you that the doctrine of equivalents cannot apply to the following elements of the asserted claims:

- "said protrusion extend[ing] from said end piece wall" (Claim 1 and dependent claims)

- "A protrusion for actuating a bypass valve" (Claim 2 and dependent claims)

- "said protrusion extend[ing] from said end piece wall" (Claim 4 and dependent claims)

- "the protrusion extend[ing] from the end piece wall" (Claim 28)[38]

Consequently, each of the elements above must be literally present within TST Water's product or method for there to be infringement of the claim.[39]

---

[36] AIPLA Model Patent Jury Instructions, V.3.8 (2016). TST Water disagrees with Whirlpool's suggestion that prosecution history estoppel has been waived. TST water is entitled to have prosecution history estoppel determined at some point in this case.  The evidence needed to determine prosecution history estoppel will already be presented at trial: Whirlpool's prosecution of the asserted claims sheds important light on the context of the claims relative to prior art designs, and therefore is relevant to a factual determination of whether the accused products are equivalent to the claimed elements.   TST Water therefore suggests that the Court rule on prosecution history estoppel during the trial.  The parties could submit bench briefs if that would assist the Court.  If the Court finds an estoppel, TST Water's proposed instruction would be appropriate TST Water is open to other methods of addressing and resolving this issue.

[37] Whirlpool objects to this instruction as incorrect, attempting to predetermine the ultimate issue, and untimely.  The Court has not made this determination, and TST did not move for summary judgment of no equivalents based on prosecution history estoppel.  Now, for the first time in the context of *jury instructions* on a claim-dispositive issue, TST is belatedly attempting to invoke the doctrine.  Its invocation is incorrect, in any event.  As Whirlpool's expert Dr. Beaman has explained, the amendments during prosecution did not relate to how the protrusion extends from the end piece wall (for claims 1, 4, 28, and related dependent claims).  Similarly, an equivalents instruction on claim 2 is unnecessary, as TST Water's expert does not dispute that its filters have a protrusion for actuating a bypass valve.

[38] As discussed above, Whirlpool disagrees that the Court has decided this issue or that TST Water's assertion of the issue is timely or correct.

[39] As discussed above, Whirlpool disagrees that the Court has decided this issue or that TST Water's assertion of the issue is timely or correct.

19

sf-3740432

As for the remaining elements of the asserted claims not listed above, you are permitted to find these elements with the doctrine of equivalents analysis that I instructed you on earlier.[40][41]]

In contrast to a utility patent, design patents cover only the "ornamental design for an article of manufacture."[42]  Where a design contains both functional elements and ornamental elements, the scope of the claim in a design patent is limited to the non-functional aspects of the design.[43]

## VI.    Indirect infringement

In addition to alleging direct infringement of the asserted patent claims, Whirlpool alleges that TST Water indirectly infringes claims 2, 3 and 28 of the '894 patent by:  (1) inducing infringement by consumers, and (2) contributing to  infringement by consumers.[44] **[TST Water proposal**: TST Water denies that it indirectly infringes any claim of the '894 patent.][45]

### A.    Induced Infringement

The act of encouraging or inducing others to infringe a patent is called "inducing infringement."

Whirlpool alleges that TST Water is liable for induced infringement of **[Whirlpool Proposal:** claims 2, 3 and 28 of the '894 patent][46] **[TST Water proposal**: the claims of the '894

---

[40] AIPLA Model Patent Jury Instructions, V.3.8 (2016)

[41] Whirlpool objects to this instruction as unnecessary and duplicative.

[42] 35 U.S.C. § 171

[43] *Egyptian Goddess*, 543 F.3d at 680.

[44] Transcript of Jury Trial, *ContentGuard Holdings, Inc. v. Samsung Elecs. Co. Ltd.*, 2:14-cv-00061 (E.D. Tex. Dec. 4, 2015), Dkt No. 445

[45] Whirlpool objects to TST Water's deviation from the agreed default instructions as attempting to unnecessarily emphasize its denial of infringement in an introductory section relating to laying out legal requirements.

[46] Whirlpool currently is asserting indirect infringement only as to claims 2, 3, and 28.  It intends to narrow its asserted claims from those currently asserted directly (i.e., claims 1-4, 10-15, 17-24,

patent][47] by actively inducing consumers to directly infringe those claims. As with direct infringement, you must determine whether there has been active inducement on a claim-by-claim basis. TST Water is liable for inducing infringement of a claim if Whirlpool proves by a preponderance of the evidence that:

(1)  Consumers using the accused products directly infringe that claim;

(2) TST Water took action with the intent to cause those infringing acts, and did cause those acts; and

(3) TST Water knew that the acts of consumers, if taken, would constitute infringement of that patent, or that TST Water was willfully blind to that infringement.

To prove willful blindness, Whirlpool must show by a preponderance of the evidence that there was a high probability that a fact existed and that TST Water took deliberate acts to avoid learning of that fact.[48]

[**TST Water proposal**: If you find that TST Water was aware of the patent, but believed that the acts it encouraged did not infringe that patent, TST Water cannot be liable for inducement.[49] In order to establish active inducement of infringement, it is not sufficient that consumers directly infringe the claim. Nor is it sufficient that TST Water was aware of the act(s)

---

and 27-28) or indirectly by February 20, 2017.  TST Water's insistence on presenting its declaratory judgment counterclaims to the jury on claims that Whirlpool is not asserting is illogical. Regardless, TST Water should be required to narrow its claims for which it is seeking a declaration of non-infringement to those that Whirlpool actually is asserting.  Finally, as discussed above, TST Water's desire to advance the argument that claims 1 and 4 require a head assembly contradicts this Court's claim construction order.

[47] *See* footnote 3, *supra*.

[48] Transcript of Trial, *Smartflash LLC v. Apple Inc.*, Case No. 6:13-cv-447-JRG (E.D. Tex. Feb. 24, 2015) Dkt. No. 521.

[49] TST Water's instruction does not account for the fact that the knowledge requirement of induced infringement may be satisfied by showing actual knowledge or willful blindness. *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 768 (2011).

by consumers that allegedly constitute the direct infringement. Rather, in order to find active inducement of infringement, you must find either that TST Water specifically intended consumers to infringe the '894 patent or that TST Water believed there was a high probability that consumers would infringe the '894 patent, but deliberately avoided learning the infringing nature of consumers' acts. The mere fact, if true, that TST Water knew or should have known that there was a substantial risk that consumers' acts would infringe the '894 patent would not be sufficient for active inducement of infringement.[50]][51]

### B.    Contributory Infringement

Whirlpool argues that TST Water is also liable for contributory infringement by contributing to [**Whirlpool Proposal**: direct infringement of claims 2, 3 and 28 of the '894 patent.][52]   [**TST Water proposal**: consumers' direct infringement of the claims of the '894

---

[50] FCBA Model Patent Jury Instructions, B3.2 (2016)  These model instructions are necessary to explain to the jury on a practical level what the identified differences between knowledge, willful blindness, and intent actually mean.  Such an instruction is appropriate to help ensure the jury is not confused by these nuanced legal terms, which use words that in ordinary use the jury may consider to be interchangeable.

[51] Whirlpool objects to TST Water's deviation from the agreed default instructions as unnecessary and misleading.  First, the last three sentences of TST Water's proposed addition are duplicative of the agreed-upon portions of the induced infringement instruction.   Second, "deliberately avoided learning" (*i.e.,* willful blindness) is one way to induce infringement, but is not the only one.   *See Global-Tech Appliances, Inc. v. SEB S.A.,* 563 U.S. 754, 766 (2011) (explaining that "induced infringement under § 271(b) requires knowledge that the induced acts constitute patent infringement," and noting that this may be satisfied by proof of willful blindness).  Third, it is likely to cause jury confusion.  Fed. R. Evid. 403.

[52] As discussed above, Whirlpool currently is asserting indirect infringement only as to claims 2, 3, and 28.  It intends to narrow its asserted claims from those currently asserted directly (i.e., claims 1 -4, 10-15, 17-24, and 27-28) or indirectly by February 20, 2017. TST Water's insistence on presenting its declaratory judgment counterclaims to the jury on claims that Whirlpool is not asserting is illogical.  Regardless, TST Water should be required to narrow its claims for which it is seeking a declaration of non-infringement to those that Whirlpool actually is asserting.

patent.][53] You must determine whether there has been contributory infringement on a claim-by-claim basis.

In order to prove contributory infringement of an asserted claim, Whirlpool must prove each of the following by a preponderance of the evidence:

(1) TST Water sold or offered to sell within the United States a component for use in a product during the time the asserted patent was in force;

(2) the component has no substantial, noninfringing use;

(3) the component constitutes a material part of the invention;

(4) TST Water was aware of the asserted patent and knew that the products or method for which the component has no other substantial use would be covered by a claim of the asserted patent; and

(5) that use directly infringes the asserted claim.[54]

---

[53] TST Water should be allowed to pursue its declaratory judgment of non-infringement for every claim in the '894 patent, *supra* at note 3.

[54] Transcript of Jury Trial, *ContentGuard Holdings, Inc. v. Samsung Elecs. Co. Ltd.*, 2:14-cv-00061 (E.D. Tex. Dec. 4, 2015), Dkt. No. 445

sf-3740432

## VII.   Implied License[55]

[**Whirlpool proposal:** Whirlpool opposes TST's instruction in its entirety.[56] To the extent the court decides to submit the issue to the jury, Whirlpool alternatively agrees to the following instruction except where indicated:]

---

[55] Similar to obviousness, implied licenses is a legal determination based on underlying factual determinations.  *See Wang Labs., Inc. v. Mitsubishi Elecs. Am., Inc.*, 103 F.3d 1571, 1581 (Fed. Cir. 1997).  As such, an instruction on implied license is appropriate so that the jury can make the needed underlying factual determinations.
There is no reason to think that the jury would confuse a defense to indirect infringement with direct infringement.

[56] As Whirlpool has explained in the joint pretrial order, the issue of implied license is a legal question for the court and should not be submitted to the jury. *Anton/Bauer, Inc. v. PAG, Ltd.*, 329 F.3d 1343, 1348 (Fed. Cir. 2003); *Met-Coil Sys. Corp. v. Korners Unlimited, Inc.*, 803 F.2d 684, 687 (Fed. Cir. 1986) ("The sole disputed issue decided by the trial court, the existence of an implied license, is a question of law."). Any jury finding would be advisory. *See Cornell University v. Hewlett-Packard Co.*, No. 01-cv-19742009 WL 1082485, *9 (N.D.N.Y. 2009) (Rader, J., by designation) ("[T]he jury's verdict on these issues was merely advisory[,] [as] [t]he existence of an implied license is a question of law reserved for the court.")  The Court is well positioned to decide such legal issues via bench trial and has in prior cases.  *See, e.g., Genband*, 2016 U.S. Dist. LEXIS 134659, at *97 (bench trial on implied license).  *Wang Labs., Inc. v. Mitsubishi Elecs. Am., Inc.* is distinguishable, as the parties "***agreed*** to submit Mitsubishi's implied license defense to the jury." 103 F.3d 1571, 1578 (Fed. Cir. 1997) (emphasis added).
  The defense is inapplicable, in any event, as the part being replaced is separately patented.  *See R2 Med. Sys., Inc. v. Katecho, Inc.*, 931 F. Supp. 1397, 1444 (N.D. Ill. 1996) (explaining that "if the patent owner also acquires a separate patent on an individual component of the combination, it is no longer appropriate to imply a license to replace that component with a part that infringes on the patent owner's separate patent"; granting summary judgment of no implied license because, by "obtaining a patent over a construction of the disposable electrode component, R2 has indicated that it withholds the authority to replace spent electrodes with electrodes that infringe upon the separate electrode patents."); *see also Warner & Swasey Co. v. Held*, 256 F. Supp. 303, 311 (1966) ("[T]he very fact that the patentee of a patented combination bothers to secure a patent upon a component part of that combination negates any inference that in selling the combination he contemplates or intends licensing such purchaser to replace the patented part from any source other than himself.").
  Submitting the issue to the jury risks substantial confusion over the scope of TST Water's implied license defense. TST Water does not dispute that the defense is limited to inducement and contributory infringement involving the customer's use of the W-5 filter physically coupled with the head assembly. But Whirlpool also is alleging that TST Water directly infringes under 35 U.S.C. § 271(a) by making, using, and selling the W-5 filter (*i.e.*, without the head assembly). If instructed on this legal issue, the jurors are likely to confuse the evidence only relevant to indirect infringement as bearing on TST Water's direct infringement. *See* Dkt. No. 100

24

I'll now instruct you on the rules that you must follow in deciding whether or not TST Water has proven the affirmative defense of implied license related to **[TST Water Proposal: the '894 patent.]** **[Whirlpool Proposal:** claims 2, 3, and 28.**]**

TST Water contends that Whirlpool's sale of refrigerators prior to this litigation established an implied license for purchasers to practice **[TST Water Proposal: the '894 patent.]** **[Whirlpool Proposal:** claims 2, 3, and 28 of the '894 patent.**]**  If purchasers of Whirlpool Filter 3 refrigerator have an implied license, the purchasers do not infringe **[Whirlpool Proposal: those claims of]** the '894 patent.  In turn, TST Water will not be liable for either inducement of infringement or contributory infringement **[Whirlpool Proposal: of claims 2, 3, and 28]**.[57]

To prove consumers had an implied license, TST Water bears the burden of showing:

(1)      the patentee sells an article that has no noninfringing uses; and

(2)      the circumstances of the sale plainly indicate that the grant of a license should be inferred.[58]

The defense of implied license applies only to Whirlpool's allegations of induced and contributory infringement—not direct infringement. **[Whirlpool Proposal:  Even if you find that TST Water has proven an implied license for those allegations (which involve claims 2 3, and 28 only), TST Water still may be a direct infringer of claims 1-4, 10-15, 17-24, 27 or 28. To**

---

**(Whirlpool's Motions in Limine) at 6-8;** *Anton/Bauer*, 329 F.3d at 1353 (manufacturer can be "liable as a direct infringer by manufacturing [an independently patented] part itself"); *Lifescan, Inc. v. Polymer Tech. Int'l Corp.*, No. C94-672R, 1995 WL 271599, at *7 (W.D. Wash. Jan. 3, 1995) (rejecting as "frivolous" manufacturer's position that it did not directly infringe because "an implied license held by [its] consumers could create a defense to its own infringement liability."). That the claims involve overlapping subject matter—namely, the filter cartridge— heightens the risk of jury confusion.**

[57] *Anton/Bauer*, 329 F.3d at 1350.

[58] *Id.*; *see also Met-Coil Sys. Corp. v. Korners Unlimited, Inc.*, 803 F.2d 684, 686 (Fed. Cir. 1986)

determine whether TST Water is a direct infringer, you must follow the rules I described only in Section V entitled "Direct Infringement."[59][60]]

## VIII.   Permissible Repair[61]

[**Whirlpool Proposal**: Whirlpool opposes TST Water's instruction in its entirety.[62]]

---

[59] Whirlpool proposes these two sentences to safeguard against juror confusion regarding the scope of TST Water's implied license defense. Any implied license through the sale of a patented product extends only ***to the purchaser***. *See Anton/Bauer*, 329 F.3d at 1350 ("[A] patentee grants an implied license to a purchaser when (1) the patentee sells an article that has no noninfringing uses and (2) the circumstances of the sale plainly indicate that the grant of a license should be inferred."); *see also Carborundum Co. v. Molten Metal Equip. Innovations, Inc.*, 72 F.3d 872, 878 (Fed. Cir. 1995) ("If Metaullics' ***customers*** had an implied license to practice the invention for the full patent term, then MMEI would not be liable for either contributory infringement or inducement to infringe) (emphasis added). If a purchaser has an implied license, then a requisite element of § 271(b) and (c)—the customers' direct infringement—cannot be shown. But it does not follow that TST Water itself holds an implied license to practice the '894 patent. Rather than asking a lay juror to parse this legal distinction, the proposed instruction explains which claims would be covered by the jury's decision on implied license and therefore mitigates the risk that the jury will improperly apply implied license to Whirlpool's direct infringement claims.

[60] TST Water opposes this instruction as duplicative and likely to influence the jury's outcome. The prior sentence fully explains that this defense does not apply direct infringement. Whirlpool's undue emphasis of this point improperly suggests to the jury that they should in fact find direct infringement.

[61] Similar to obviousness, permissible repair is a legal determination based on underlying factual determinations. *Fuji Photo Film Co. v. Int'l Trade Comm'n*, 474 F.3d 1281 (Fed. Cir. 2007). As such, an instruction on permissible repair is appropriate so that the jury can make the needed underlying factual determinations. There is no reason to think that the jury would confuse a defense to indirect infringement with direct infringement.

[62] As Whirlpool has discussed in the joint pretrial order, permissible repair is a legal question that should not be submitted to the jury. *See Fuji Photo Film Co. v. Int'l Trade Comm'n*, 474 F.3d 1281 (Fed. Cir. 2007) ("Repair, as an affirmative defense to a claim of patent infringement, is a legal question based on underlying facts."); *see also Porter v. Farmers Supply Serv., Inc.*, 617 F. Supp. 1175, 1185 fn. 6 (D. Del. 1985), *aff'd*, 790 F.2d 882 (Fed. Cir. 1986) ("[T]he question of repair or reconstruction is primarily one of law that will seldom involve disputed issues of fact."). The Court is well positioned to decide such legal issues via bench trial and has in prior cases. *Cf., e.g., Genband US LLC,* 2016 U.S. Dist. LEXIS 134659, at *97 (bench trial on implied license).

The doctrine also is inapplicable as the cartridge is separately patented. *See Porter*, 790 F.2d at 885-86 ("[A] licensed user may replace any element no matter 'how essential it may be to the patented combination,' as long as the replaced element is ***not itself, i.e., separately, claimed***."

sf-3740432

To the extent the court decides to submit the issue to the jury, Whirlpool alternatively proposes the following instruction:]

I'll now instruct you on the rules that you must follow in deciding whether or not TST Water has proven the affirmative defense of permissible repair related to [**TST Water Proposal:** the '894 patent.] [**Whirlpool Proposal:** claims 2, 3, and 28.]

If purchasers of Whirlpool Filter 3 refrigerators engage only in permissible repair, they do not directly infringe [**Whirlpool Proposal**: claims 2, 3, and 28 of] the '894 patent.  In that case, TST Water will not be liable for either inducement of infringement or contributory infringement of [**TST Water Proposal:** the '894 patent.] [**Whirlpool Proposal:** claims 2, 3, and 28.]A purchaser may repair a patented combination by replacing an element so long as the replaced element is not also patented.[63] TST Water bears the burden of showing consumers were engaged in permissible repair of the patented invention.[64]

_____

(quoting *Aro Mfr.Co. v. Convertible Top Replacement Co.*, 365 U.S. 336, 341 (1961) (emphasis added)); *see also R2*, 931 F. Supp. at 1444 (replacement of patented disposable electrode in patented combination not permissible repair); *Fargo Elecs., Inc. v. Iris Ltd., Inc.*, No. 04-1017 JRT/FLN, 2005 WL 3241851, at *8 (D. Minn. Nov. 30, 2005) ("[I]f Fargo's ribbon . . . is separately patented, Iris cannot avoid liability for contributory infringement or infringement by inducement of the combination claims"); *Warner*, 256 F. Supp. at 311 (denying summary judgment based on separate patentability of removable bit of patented cutting tool, as *Aro* concerned only replacement of unpatented components in patented combination).

   Repair also serves as a defense only to TST Water's liability for induced and contributory infringement. If instructed on this legal issue, jurors are likely to conflate repair as a defense to indirect infringement with TST Water's direct infringement of the '894 patent. Whirlpool therefore asks that the court decide this legal question and the implied license issue, as discussed.

[63] *Aro Mfg. Co.*, 365 U.S. at 346 (finding non-infringement on basis of permissible repair where replacement fabric was unpatented element of a combination patent for convertible top); *see also Fuji Photo Film Co., Ltd. v. Int'l Trade Com'n*, 474 F.3d 1281, 1296-97 (Fed. Cir. 2007) (refurbishing patented disposable camera by breaking unpatented back covers, inserting unpatented film, and repackaging with new cover was repair); *Jazz Photo v. U.S.*, 439 F.3d 1344, 1354-55 (Fed. Cir. 2006) (refurbishing of patented camera by replacing unpatented film and canister was repair); *Jazz Photo Corp. v. Int'l Trade Comm'n*, 264 F.3d 1094, 1105-07 (Fed. Cir. 2001) (same); *Surfco Hawaii v. Fin Control Sys. Pty, Ltd.*, 264 F.3d 1062, 1066 (Fed. Cir. 2001)

This defense of permissible repair applies only to Whirlpool's allegations of induced and contributory infringement—not direct infringement. [**Whirlpool Proposal:** Even if you find that TST Water has proven permissible repair for those allegations (which involve claims 2 3, and 28 only), TST Water may still be liable as a direct infringer of claims 1-4, 10-15, 17-24, 27 or 28. To determine whether TST Water is a direct infringer, you must follow the rules I described only in Section V entitled "Direct Infringement."] [65][66]

---

(replacement of unpatented fins on patented surfboard was repair); *Bottom Line Mgmt., Inc. v. Pan Man, Inc.*, 228 F.3d 1352, 1355 (Fed. Cir. 2000) (refurbishing patented cooking pan by replacing unpatented Teflon coat on bottom of pan was repair); *Hewlett–Packard*, 123 F.3d at 1452 (refurbishing patented cartridge by replacing unpatented ink was repair); *cert. denied*, 523 U.S. 1022 (1998); *Kendall Co. v. Progressive Med. Tech., Inc.*, 85 F.3d 1570, 1573-75 (Fed. Cir. 1996) (replacement of unpatented sleeves of patented medical device, before sleeves were spent, was repair); *Sage Prods, Inc. v. Devon Indus., Inc.*, 45 F.3d 1575, 1579 (Fed. Cir. 1995) (replacement of unpatented inner container, once full of medical waste, was permissible repair of patented combination medical container); *FMC Corp. v. Up–Right, Inc.*, 21 F.3d 1073, 1077-78 (Fed. Cir. 1994) (replacing worn unpatented picking heads of patented harvester was repair); *Porter v. Farmers Supply Serv., Inc.*, 790 F.2d 882, 885-86 (Fed. Cir. 1986) (replacing unpatented disks in patented head of tomato harvester was repair); *Gillette Safety Razor Co. v. Standard Safety Razor Co.*, 64 F.2d 6, 17 USPQ 397 (2d Cir.) (replacing unpatented disposable blades in patented razor combination was repair).

[64] *Fuji Photo Film Co., Ltd. v. Jazz Photo Corp.*, 394 F.3d 1368, 1373 (Fed. Cir. 2005).

[65] Whirlpool proposes these two sentences to safeguard against juror confusion regarding the scope of TST Water's permissible repair defense, if put before the jury. TST does not dispute that the permissible repair doctrine, if applicable, would extend only ***to the purchaser***. In that event, the customers' direct infringement could not be shown. But it does not follow that TST Water itself may practice the '894 patent. Rather than asking a lay juror to parse this legal distinction, the proposed instruction explains which claims would be covered by the jury's decision on permissible repair and therefore mitigates the risk that the jury will improperly apply the doctrine as a defense to Whirlpool's direct infringement claims.

[66] TST Water opposes this instruction as duplicative and likely to influence the jury's outcome. The prior sentence fully explains that this defense does not apply direct infringement. Whirlpool's undue emphasis of this point improperly suggests to the jury that they should in fact find direct infringement.

28

## IX.      Willfulness

In this case, Whirlpool also contends that TST Water has willfully infringed its patent. If you have decided that TST Water has infringed, you must go on and address the additional issue of whether or not this infringement was willful.

You may find that TST Water willfully infringed if you find that TST Water acted egregiously, willfully, or wantonly. You may find that TST Water's actions were egregious, willful, or wanton if TST Water acted in reckless or callous disregard of, or with indifference to, the rights of Whirlpool. A defendant is indifferent to the rights of another when it proceeds in disregard of a high and excessive danger of infringement that is known to it or was apparent to a reasonable person in its position.

Your determination of willfulness should incorporate the totality of the circumstances based on the evidence presented during this trial. If you decide that any infringement was willful, that decision should not affect any damage award you give. I will take willfulness into account later.

Whirlpool has the burden of proving willfulness by a preponderance of the evidence.

## X.      Invalidity– Burden of Proof

I'll now instruct you on the rules that you must follow in deciding whether or not TST Water has proven that the asserted claims of the asserted patent are invalid.

An issued patent is accorded a presumption of validity based on the presumption that the United States Patent and Trademark Office, which you've often heard referred to simply as the Patent Office or PTO, acted correctly in issuing the patent. This presumption of validity extends to all issued patents.

To prove that any claim of a patent is invalid, TST Water must persuade you by clear and convincing evidence that the claim is invalid. Like infringement, invalidity is determined on a

claim-by-claim basis. You must determine separately for each claim whether that claim is invalid. If one claim of a patent is invalid, this does not mean that any other claim is necessarily invalid. Claims are construed the same way for determining infringement as for determining invalidity. You must apply the claim language consistently and in the same manner for issues of infringement and for issues of invalidity.

In evaluating the prior art to determine whether an invalidity defense has been proved by clear and convincing evidence, you must consider whether that prior art is materially new, that is, different from the prior art considered by the Patent Office.  Prior art differing from the prior art considered by the Patent Office may, but does not always, carry more weight than the prior art that was considered by the Patent Office. In making your determination as to invalidity, ladies and gentlemen, you should consider each claim separately.

## XI.    Invalidity – Obviousness

TST Water contends in this case that the asserted claims of the asserted patent are invalid as being obvious. Even though an invention may not have been identically disclosed or identically described in a single prior art reference before it was made by an inventor, the invention may have been obvious to a person of ordinary skill in the field of technology of the patent at the time the invention was made. TST Water has the burden of establishing obviousness by clear and convincing evidence.

In determining whether a claimed invention is obvious, you, the jury, must consider the level of ordinary skill in the field of technology of the patent that someone would have had at the time the claimed invention was made, the scope and content of the prior art, any differences between the prior art and the claimed invention, as well as the ordinary knowledge of the person of ordinary skill at the time of the invention.

30

The skill of the actual inventor is not necessarily relevant because inventors may possess something that distinguishes them from workers of ordinary skill in the art. Keep in mind that the existence of each and every element of the claimed invention in the prior art does not necessarily prove obviousness. Most, if not all inventions, rely on the building blocks of prior art.

In considering whether a claimed invention is obvious, you should consider whether, as of the priority date of the asserted patent, there was a reason that would have prompted a person of ordinary skill in the field to combine the known elements in a way that the claimed invention does, taking into account such facts as:

1. Whether the claimed invention was merely the predictable result of using prior art elements according to their known function;

2. Whether the claimed invention provides an obvious solution to a known problem in the relevant field;

3. Whether the prior art teaches or suggests the desirability of combining elements in the manner of the claimed inventions;

4. Whether the prior art teaches away from combining elements in the manner of the claimed invention;

5. Whether it would have been obvious to try the combination of elements in the claimed invention, such as when there is a design need or market pressure to solve a problem, and there are a finite number of identified, predictable solutions; and

6. Whether the change resulted more from design incentives or other market forces.

In determining whether the claimed invention was obvious, consider each claim separately, and consider only what was known at the time of the invention.

sf-3740432

In making these assessments, ladies and gentlemen, you should take into account any objective evidence, sometimes called secondary considerations, that may have existed at the time of the invention, and afterwards, that may shed light on non-obviousness. The following are possible secondary considerations, but it's up to you to decide whether secondary considerations of non-obviousness exist at all:

1. Whether the invention was commercially successful as a result of the merits of the claimed invention, rather than the result of design needs or market pressure, advertising, or similar activities;

2. Whether the invention satisfied a long-felt need;

3. Whether others had tried and failed to make the invention;

4. Whether others copied the invention;

5. Whether there were changes or related technologies or market needs contemporaneous with the invention;

6. Whether the invention achieved unexpected results;

7. Whether others in the field praised the invention;

8. Whether persons having ordinary skill in the art of the invention expressed surprise or disbelief regarding the invention;

9. Whether others sought or obtained rights to the patent from the patent-holder; and

10. Whether the inventor proceeded contrary to accepted wisdom in the field.

In support of obviousness, you may also consider whether others independently invented the claimed invention before or at about the same time as the named inventor thought of it. If you find that TST Water has proved the obviousness of a claim by clear and convincing evidence, then you must find that the claim is invalid.

## XII.  Person of Ordinary Skill in the Art

Several times in my instructions I've referred to a person of ordinary skill in the field of the invention. It's up to you to decide the level of ordinary skill in the field of the invention. You should consider all of the evidence introduced at the trial in making this decision, including the following:

1. the levels of education and experience of persons working in the field;

2. the types of problems encountered in the field;

3. prior art solutions to those problems;

4. rapidity with which innovations are made; and

5. the sophistication of the technology.

A person of ordinary skill in the art is a hypothetical person who is presumed to have known all of the relevant prior art at the time of the claimed invention.

## XIII.  Damages Generally

If you find that TST Water has infringed any valid claim of Whirlpool's asserted patent, you must then consider what amount of damages to award to Whirlpool. I'll now instruct you about the measure of damages. And by instructing you on damages, I'm not suggesting which party should win this case on any issue.

The damages you award must be adequate to compensate Whirlpool for any infringement that you may find. You must not award Whirlpool more damages than are adequate to compensate for the infringement, nor should you include any additional amount for the purpose of punishing TST Water or setting an example. Whirlpool has the burden to establish the amount of its damages by a preponderance of the evidence. The patent owner is not entitled to damages that are remote or speculative.

33

I'll give more detailed instructions regarding damages shortly. Note, however, that if you determine that the patent is infringed and not invalid, Whirlpool is entitled to recover no less than a reasonable royalty for each infringing sale or use of its inventions.  Whirlpool seeks either a reasonable royalty or lost profit as damages for each of TST Water's sales that you find infringes any valid patent claim.  The determination of a damages award is not an exact science, and the amount need not be proven with unerring precision. Ladies and gentlemen, you may approximate, if necessary, the amount to which the patent owner is entitled.

Damages may not be determined, however, by mere speculation or guess.  It may be proper to award a damages amount if the evidence shows the extent of the damages as a matter of just and reasonable inference.

## XIV.   Lost Profits[67]

Whirlpool is seeking its lost profits as part of its patent damages. Lost profits consist of any actual reduction in business profits that Whirlpool suffered as a result of TST Water's alleged infringement. In this case, Whirlpool seeks to recover lost profits for some of TST Water's sales and a reasonable royalty on the rest of TST Water's sales of W-5 products.

To recover lost profits, as opposed to a reasonable royalty, Whirlpool must show a causal relationship between the infringement and Whirlpool's loss of profits. In other words, Whirlpool must show a reasonable probability that it would have made the asserted sales "but for" the infringement.[68] Whirlpool must prove that if there had been no infringement, Whirlpool would have made some portion of the sales that TST Water made on the infringing products. In other

---

[67] *Mars, Inc. v. TruRX LLC*, 6:13-cv-526 (E.D. Tex. May 6, 2016), ECF No. 368.

[68] *Grain Processing Corp. v. Am. Maize-Prod. Co.*, 185 F.3d 1341, 1349 (Fed. Cir. 1999); *see also Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995); *Am. Seating Co. v. USSC Grp., Inc.*, 514 F.3d 1262, 1269 (Fed. Cir. 2008); *BIC Leisure Prod., Inc. v. Windsurfing Int'l, Inc.*, 1 F.3d 1214, 1218 (Fed. Cir. 1993)

sf-3740432

words, Whirlpool needs to show that TST Water's products took sales away from Whirlpool products.

Whirlpool may only receive damages for lost sales on those products that are sufficiently similar to compete in the same market with the same customers as TST Water's products that you find to infringe. [**TST Water proposal**: Two products are sufficiently similar if one does not have a significantly higher price than the other or possess characteristics significantly different than the other.[69]][70]

---

[69] ION, INC., Plaintiff., v. SERCEL, INC., Defendant., 2010 WL 1046753 (E.D. Tex.); PIONEER CORPORATION, Plaintiff, v. SAMSUNG SDI CO., LTD., Samsung Electronics Co., Ltd., Samsung SDI America, Inc. and Samsung Electronics America, Inc., Defendants., 2008 WL 5356272 (E.D. Tex.); *BIC Leisure Prod., Inc. v. Windsurfing Int'l, Inc.*, 1 F.3d 1214, 1218 (Fed. Cir. 1993); *Comair Rotron, Inc. v. Nippon Densan Corp.*, 49 F.3d 1535, 1540 (Fed. Cir. 1995); *Crystal Semiconductor Corp. v. TriTech Microelectronics Int'l, Inc.*, 246 F.3d 1336, 1356 (Fed. Cir. 2001) (quoting *BIC Leisure*, 1 F.3d at 1218) (*abrogated on other grounds by Jazz Photo Corp. v. ITC*, 264 F.3d 1094, 1104–05 (Fed.Cir.2001).

This instruction, which was directly adapted from another case in this district, is appropriate to inform the jury that a "significantly" higher price will prevent products from being substantially similar.  The jury should decide if the price difference in this case is so "significant."  None of the cases cited by Whirlpool question that a higher price **can** prevent products from being sufficiently similar. And a clear instruction needs to be given on this point—as it properly was in the *ION* case—because on the surface it may not be apparent to a juror that "sufficient similarity" includes similarity of price as well as similarity of product features.

Nothing in *Akamai v. Limelight* conflicts with this instruction. 805 F.3d 1368 (Fed. Cir. 2015), cert. denied, 136 S. Ct. 1661 (2016).  The Court in *Akamai* concluded that a higher price did not prevent lost profits as a matter of law, but TST Water is not seeking an order from the Court that lost profits are precluded as a matter of law.  The jury should still decide whether the price difference in this case is so significant that it prevents some or all recovery of lost profits.

[70] TST Water's proposed instruction is unnecessary because, "[i]n the two-supplier market, it is reasonable to assume, provided the patent owner has the manufacturing and marketing capabilities, that it would have made the infringer's sales." *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1578 (Fed. Cir. 1989). Here, it is undisputed that there are no non-infringing alternatives in any channel. The instruction also is highly prejudicial, misleading, and likely to cause jury confusion because it inaccurately suggests that a significant price difference is determinative of whether two products compete. But TST Water's damages expert admits that TST Water and Whirlpool are competitors (Dkt. No. 85-12 at 99:15-20), and disparate prices are not determinative of competition. *See Akamai Techs., Inc. v. Limelight Networks, Inc.*, 805 F.3d 1368, 1380–81 (Fed. Cir. 2015), cert. denied, 136 S. Ct. 1661 (2016) (rejecting argument that the

sf-3740432

In order to be entitled to lost profits Whirlpool must establish each of the following factors:

(1) that there was a demand for the patented products;

(2) that there was no available, acceptable non-infringing substitute products;

(3) that Whirlpool has the manufacturing and marketing capability to make the infringing sales actually made by TST Water and for which Whirlpool seeks an award of lost profits; and

(4) the amount of profit that Whirlpool would have made if TST Water had not infringed.

The parties have stipulated that factors 2 and 3 are met.

Whirlpool can prove there was a demand for the patented product in one of two ways. First, Whirlpool can show significant sales of its own patented products. Second, Whirlpool can prove demand for the patented products by showing significant sales of TST Water's products that are covered by the patent-in-suit.[71]

If you conclude that Whirlpool has proved that but for TST Water's infringement, Whirlpool would have made some portion of TST Water's sales, Whirlpool may calculate its lost

---

100% price disparity "necessarily created a market segmentation in which Akamai was separate from Limelight" such that lost profits were unavailable). TST Water's cases confirm this. *See BIC Leisure Prod., Inc. v. Windsurfing Int'l, Inc.*, 1 F.3d 1214, 1218 (Fed. Cir. 1993) (considering facts that (a) "at least fourteen competitors vied for sales in the sailboard market" and (b) the patentee's sailboards "differed fundamentally" because they were designed for a different competition class); *Comair Rotron, Inc. v. Nippon Densan Corp.*, 49 F.3d 1535, 1540 (Fed. Cir. 1995) (noting that "the infringer's customers will not *necessarily* transfer their demand to the patentee's product in the absence of the infringing product" "if the products are not sufficiently similar—in terms of price, product characteristics, *and* marketing channels—to compete for the same customers"—not that (a) the infringer's customers *cannot* transfer if its products have a significantly different price or (b) differences in price *alone* mean that products cannot be sufficiently similar to compete for the same customers); *Crystal Semiconductor Corp. v. TriTech Microelectronics Int'l, Inc.*, 246 F.3d 1336, 1356 (Fed. Cir. 2001) (considering whether parties targeted different market segments even though their products had approximately same price).

[71] Federal Circuit Bar Association Model Patent Jury Instructions, B6.2 (July 2016).

profits by computing the lost revenue for sales it proved that it would have made but for the infringement and subtracting from that figure the amount of additional cost or expenses it would have incurred in making those lost sales such as the cost of goods, sales costs, packaging costs and shipping costs.

## XV.   Reasonable Royalty

Under the patent laws, if infringement of a patent not determined to be invalid is found, Whirlpool is entitled to recover no less than a reasonable royalty for each infringing sale or use of its inventions. This means that if you have determined that the Whirlpool is entitled to damages, you should award Whirlpool a reasonable royalty for those TST Water sales of the W-5 filter for which you have not awarded any lost profits. A royalty is a payment to a patent holder in exchange for the right to make, use, sell, or import the claimed invention. A reasonable royalty is the amount of money to be paid for a license to make, use, or sell the invention that a willing patent owner and a willing prospective licensee would have agreed to immediately before the infringement began as part of a hypothetical negotiation.

In considering this hypothetical negotiation, you should focus on what the expectations of the patent-holder and the infringer would have been had they entered into an agreement at that time and had they acted reasonably in their negotiations. In determining this, you must assume that both parties believed the patent was valid and infringed and the patent-holder and infringer were willing to enter into an agreement. The reasonable royalty you determine must be the royalty that would have resulted from this hypothetical negotiation and not simply a royalty either party would have preferred.

Evidence of things that happened after infringement first began may be considered in evaluating the reasonable royalty only to the extent that the evidence aids in assessing what royalty would have resulted from a hypothetical negotiation. Where the parties dispute a matter

37

concerning damages for infringement, it is Whirlpool's burden to prove that it is more probable than not that Whirlpool's version is correct. Whirlpool must prove the amount of its damages with reasonable certainty, but need not prove the amount of damages with mathematical precision. Whirlpool, again, is not entitled to damages that are remote or speculative.

In determining the reasonable royalty, you should consider all facts known and available to the parties at the time the infringement began. Some of the kinds of factors that you should consider in making your determination are[72]:

1. The royalties received by the patentee for licensing of the asserted patent proving or tending to prove an established royalty;

2. The rates paid by the licensee for the use of other patents comparable to the asserted patent;

3. The nature and scope of the license, as exclusive or non-exclusive; or as restricted or non-restricted in terms of territory or with respect to whom the manufactured product may be sold.

4. The licensor's established policy and marketing program to maintain his patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly.

5. The commercial relationship between the licensor and licensee, such as, whether they are competitors in the same territory in the same line of business; or whether they are inventor and promoter.

---

[72] *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y. May 28, 1970).

6.   The effect of selling the patented specialty in promoting sales of other products of the licensee; that existing value of the invention to the licensor as a generator of sales of his non-patented items; and the extent of such derivative or convoyed sales.

7.   The duration of the patent and the term of the license;

8.   The established profitability of the product made under the patent; its commercial success; and its current popularity.

9.   [**TST Water Proposal**: Disregarding any necessity to use the patented invention due to any essentiality[73],[74] the utility and advantages of the patented invention

---

[73] Whirlpool's proposed instruction is untimely and should not be considered. The agreed language—which Whirlpool now seeks to change—was included by Whirlpool in the very first draft of the jury instructions that Whirlpool sent to TST Water. Whirlpool's attempt to dispute this agreed-to language comes weeks after the Court's January 30, 2017 deadline for submitting jury instructions, and is without excuse.

Even if the Court considers Whirlpool's proposed deviation from the agreed instructions, the agreed language from *CoreWireless* is appropriate here because the jury needs to be instructed that Georgia-Pacific factor 9 addresses the ***technical*** merit of the patented invention, not the value the invention may have because it is essential for interoperability with other systems. Just as incorporating a patented feature in an electronic standard makes a license to that feature valuable because it is required for a device to interoperate with other electronic devices—which has nothing to do with the value of the patented technology itself—Whirlpool's incorporation of its patented design in its refrigerators makes a license valuable because the license is necessary to make a filter that interoperates with Whirlpool's refrigerators. In both cases "the technology is used because it is essential, not necessarily because it is an improvement over the prior art." *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1231 (Fed. Cir. 2014).

Nothing in *Ericsson* limits this requirement to patents on electronic technology. When the Federal Circuit in *Ericsson* "conclude[d] that Supreme Court precedent also requires apportionment of the value of the patented technology from the value of its standardization," the Supreme Court precedent at issue was a case on mechanical mop heads. 773 F.3d at 1233 (citing *Garretson v. Clark*, 111 U.S. 120, 121 (1884)). It does not make sense that an 1884 case on mop heads would apply only to electronics patents. TST Water also disagrees with Whirlpool's characterization of *Commonwealth Sci. & Indus. Research Organisation v. Cisco Sys., Inc.* The Federal Circuit in *CSIRO* held that a reasonable royalty under section 284 should be based on the value of the technology, distinct from any value that artificially accrues to the patent. 809 F.3d 1295, 1305 (Fed. Cir. 2015), cert. denied, 136 S. Ct. 2530, 195 L. Ed. 2d 859 (2016). While the

39

over the old modes or devices, if any, that had been used for achieving similar results;

patent before the Federal Circuit in that case was an SEP patent, the Federal Circuit made no suggestion that section 284 applied differently for electronics patents, as opposed to patents on mop-heads or water filters.

If the Court is inclined to reopen debate on this previously agreed-to instruction, then the Court should provide the alternative clarification that TST Water suggested when Whirlpool raised this issue:

> 9. Disregarding any necessity to use the patented invention due to any essentiality for interoperability with Whirlpool's refrigerators, the utility and advantages of the patented invention over the old modes or devices, if any, that had been used for achieving similar results.

This language is consistent with the Federal Circuit's interpretation of *Garretson* and would tie the instruction to the facts of this case.

[74] Whirlpool's proposed instruction for Factor 9 mirrors *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y. May 28, 1970). TST Water proposes a deviation from *Georgia Pacific* based on an instruction given in *CoreWireless* to address the standard essential nature of the patents at issue in that case. The *CoreWireless* instruction referred to "disregarding any necessity to use the patented invention due to any *essentiality*" because that case dealt with standard essential patents.

TST Water seeks to include that, or in the alternative, a similar instruction here. Both TST's Water's primary and alternative instructions require the jury to disregard purported "essentiality" stemming from interoperability with Whirlpool refrigerators.

Such deviation from the standard *Georgia Pacific* factors is only appropriate in standard essential cases. *See Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1230-31 (Fed. Cir. 2014) (noting that Factor 9 is "skewed for SEPs because the technology is used because it is essential, not necessarily because it is an improvement over the prior art" and requiring trial court to modify instruction on that factor); *Commonwealth Sci. & Indus. Research Organisation v. Cisco Sys., Inc.*, 809 F.3d 1295, 1304–05 (Fed. Cir. 2015), *cert. denied*, 136 S. Ct. 2530 (2016) (noting unique need to adjust reasonable royalty for SEPs). TST Water has pointed to *no non-SEP cases* in which such a modified instruction was permitted. Moreover, TST Water—who bears to burden of establishing that Whirlpool has a RAND obligation—has never argued that the '894 patent is a SEP. *See In re Innovatio IP Ventures, LLC Patent Litig.*, 956 F. Supp. 2d 925, 931–32 (N.D. Ill. 2013) (accused infringer bears burden of demonstrating RAND obligation). Indeed, no standards development organization or court has determined—or even heard evidence—that the '894 patent is a SEP. TST's proposed deviation is an improper attempt to impose on the reasonable royalty here restrictions that are only appropriate in the SEP context.

40

10. The nature of the patented invention and the benefits to those who have used the invention;

11. The extent to which the infringer has made use of the invention and any evidence probative of the value of that use;

12. The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions.

13. The value that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer;

14. The opinion testimony of qualified experts; and

15. The amount that a licensor (such as the patentee) and a licensee (such as the infringer) would have agreed upon at the time the infringement began if both sides had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable to a prudent patentee who was willing to grant a license.

Now, ladies and gentlemen, no one of these factors is dispositive, and you can and should consider the evidence that's presented to you in this case on each of these factors. You may also consider any other factors which in your minds would have increased or decreased the royalty

sf-3740432

the infringer would have been willing to pay and the patent owner would have been willing to accept, acting as normally prudent business people.

When determining a reasonable royalty, you may consider evidence concerning the amounts that other parties have paid for rights to the patent in question, or for rights to similar technologies. A license agreement need not be perfectly comparable to a hypothetical license that would be negotiated between Whirlpool and TST Water in order for you to consider it. However, if you choose to rely upon evidence from any other license agreements, you must account for any differences between those licenses and the hypothetically negotiated license between Whirlpool and TST Water, in terms of the technologies and economic circumstances of the contracting parties, when you make your reasonable royalty determination.[75]

[**TST Water Proposal**: The amount you find as damages must be based on the value attributable to the patented technology, as distinct from other unpatented features of the accused product, or other factors such as marketing or advertising, or Whirlpool's size or market position.[76][77]

---

[75] AIPLA Model Patent Jury Instructions, V.11.16 (2016); *see also Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1227-28 (Fed. Cir. 2014); *VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1330-31 (Fed. Cir. 2014); *Apple Inc. v. Motorola Inc.*, 757 F.3d 1286, 1325-26 (Fed. Cir. 2014); *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 77-81 (Fed. Cir. 2012); *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 869-70 (Fed. Cir. 2010); *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1329, 1336 (Fed. Cir. 2009).

[76] AIPLA Model Patent Jury Instructions, V.11.16 (2016); *see also Commonwealth Sci. & Indus. Research Organisation v. Cisco Sys., Inc.*, 809 F.3d 1295, 1305 (Fed. Cir. 2015), *cert. denied*, 136 S. Ct. 2530, 195 L. Ed. 2d 859 (2016); *Garretson v. Clark*, 111 U.S. 120, 121, 4 S. Ct. 291, 291–92, 28 L. Ed. 371 (1884).
As laid out more fully in TST Water's Opposition to Whirlpool's Motion *in Limine* No. 12, the law requires a patentee to separate the value of its patented technology from other factors that contribute to the success of the product.  The Supreme Court first articulated this rule over a hundred years ago in *Garretson v. Clark*, and the Federal Circuit continues to consistently apply the rule today.  *See Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014) (citing *Garretson v. Clark*, 111 U.S. 120 (1884)).

sf-3740432

Whirlpool bears the burden to establish the amounts attributable to the patented feature. That is, Whirlpool must give evidence tending to separate or apportion between the patented features and the unpatented features, and such evidence must be reliable and tangible and not conjectural or speculative.][78][79]

The parties have not agreed that no apportionment is necessary. TST Water does not contest that the accused W-5 water may be the smallest saleable unit (if any infringement is found). But, the identification of the smallest saleable unit is only one step to meeting the plaintiff's burden of showing apportionment. *Virnetx, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1327 (Fed. Cir. 2014). Whirlpool still has the burden of providing evidence that separates the value of the patented *technology*, separate from the value created by Whirlpool's Filter 3 refrigerator market.

[77] Whirlpool objects to TST Water's deviation from the agreed upon *Core Wireless* instructions as unnecessary and confusing. As an initial matter, several of the *Georgia–Pacific* factors already included in the parties' agreed upon instruction "take[] account of the importance of the inventive contribution in determining the royalty rate that would have emerged from the hypothetical negotiation." *AstraZeneca AB v. Apotex Corp.*, 782 F.3d 1324, 1338 (Fed. Cir. 2015). Moreover, both parties' experts have expressly agreed that the smallest saleable unit here is a filter, such that apportionment is not required. (Dkt. No. 100-4 at 51:23-52:6.) *Commonwealth Sci. & Indus. Research Organisation v. Cisco Sys., Inc.*, is inapposite because that case involved a standards-essential patent, and no party is contending that here. 809 F.3d 1295, 1305 (Fed. Cir. 2015). Finally, the instruction's reference to "other factors such as marketing or advertising, or Whirlpool's size or market position" is confusing. Those factors do not relate to the value attributable to "the improvement constituting the patented feature" relative to technology improved upon for which a patentee may not be able to recover damages. *See Garretson v. Clark*, 111 U.S. 120, 121 (1884).

[78] Whirlpool objects to TST's instruction as unnecessary, duplicative, and confusing. As noted above, both parties' experts have agreed that apportionment is not necessary in this case. The references to "conjectural or speculative" evidence also are duplicative of similar statements (*e.g.,* in Section XV).

[79] This statement (adapted with the present parties' names) is from the agreed *Core Wireless* base instructions. (2:14-cv-912, Dkt. No. 45 at 40:19-24). This Court was correct to give the instruction, which is nearly verbatim from *Garretson v. Clark*: "The patentee [. . .] must in every case give evidence tending to separate or apportion the defendant's profits and the patentee's damages between the patented feature and the unpatented features, and such evidence must be reliable and tangible, and not conjectural or speculative." 111 U.S. 120, 121, 4 S. Ct. 291, 291, 28 L. Ed. 371 (1884). Because apportionment is disputed in this case, the instruction should also be given here. *See* note 74, *supra, and* TST Water's Opposition to Whirlpool's Motion *in Limine* No. 12.

sf-3740432

## XVI.    Date for Collecting Damages – Marking[80]

The date that Whirlpool first notified TST Water of its claim for patent infringement is the date for the start of damages. The parties do not agree on that date, and it is up to you to determine what that date is. Whirlpool must prove that it is more probably true than not true that TST Water was notified of the claim for patent infringement as of the date alleged by Whirlpool.

Whirlpool can give notice in two ways. The first way is to give notice to the public in general. Whirlpool can do this by marking substantially all of the products that it sold which included the patented invention, which can be satisfied by including on the labeling of substantially all of the products, the word "patent" or the abbreviation "PAT" with the number of the patent. Whirlpool also may give notice by marking substantially all of the products with "Patent" or "Pat" and a free internet address where there is a posting that connects the product with the patent number. This type of notice starts from the date Whirlpool began to mark substantially all of its products that use the patented invention with the patent number. If Whirlpool did not mark substantially all of those products with the patent number or a free internet address where there is a posting that connects the product with the patent number[81], then Whirlpool did not provide notice in this way.

A second way Whirlpool can give notice of its patent is to notify TST Water with a specific claim that the W-5 filter infringed the '894 patent. This type of notice starts from the date TST Water received the notice.

If Whirlpool proves that it products were marked or that it notified TST Water with a specific charge that the W-5 filter infringed, damages that Whirlpool may be awarded by you commence on the date that TST Water began selling the W-5 filters. That date is July of 2015.  If

---

[80] AIPLA Model Patent Jury Instructions, V.11.1.2 (2016)
[81] 35 U.S.C. § 287; AIPLA Model Patent Jury Instructions, V.11.1.2 (2016)

Whirlpool does not prove that it products were marked or that it notified TST Water with a specific charge that the W-5 filter infringed, damages that Whirlpool may be awarded by you commence on the date that Whirlpool filed its complaint against TST Water. That date is September 15, 2015.

With those instructions, ladies and gentlemen, you'll now hear closing arguments from counsel for each of the parties in the case.

[ATTORNEYS PRESENT CLOSING ARGUMENTS]

## XVII. Post-closing Summary

I would now like to provide you with a few final instructions before you begin your deliberations. You must perform your duties as jurors without bias or prejudice as to any party. The law does not permit you to be controlled by sympathy, prejudice, or public opinion. All parties expect that you will carefully and impartially consider all the evidence, follow the law as I have given it to you, and reach a just verdict, regardless of the consequences.

Answer the questions in the verdict form from the facts as you find them from this case, following the instructions that the Court has included. Do not decide who you think should win and then answer the questions accordingly. Your answers and your verdict must be unanimous.

You should consider and decide this case as a dispute between persons of equal standing in the community, of equal worth, and holding the same or similar stations in life. This is true in patent cases between corporations, partnerships, or individuals. A patent owner is entitled to protect its patent rights under the United States Constitution. This includes bringing suit in a United States District Court for money damages for infringement. The law recognizes no distinction among types of parties. All corporations, partnerships and other organizations stand equal before the law, regardless of size or who owns them, and are to be treated as equals.

When you retire to the jury room to deliberate on your verdict, you will each have a copy of this charge to take with you. If you desire to review any of the exhibits which the Court has admitted into evidence, you should advise me by a written note delivered to the Court Security Officer, and I will send that exhibit or exhibits to you. Once you retire, you should select your Foreperson and conduct your deliberations. If you recess during your deliberations, follow all of the instructions that the Court has given you about your conduct during the trial. After you have reached your verdict, your Foreperson is to fill in on the verdict form which reflects your answers to the questions. Do not reveal your answers until such time as you are discharged, unless otherwise directed by me. You must never disclose to anyone, not even to me, your numerical division on any question.

Any notes that you have taken during this trial are only aids to memory. If your memory should differ from your notes, then you should rely on your memory and not on the notes. The notes are not evidence. A juror who has not taken notes should rely on his or her independent recollection of the evidence and should not be unduly influenced by the notes of other jurors. Notes are not entitled to any greater weight than the recollection or impression of each juror about the testimony.

If you want to communicate with me at any time, please give a written message or question to the Court Security Officer, who will bring it to me. I will then respond as promptly as possible either in writing or by having you brought into the courtroom so that I can address you orally. I will always first disclose to the attorneys your question and my response before I answer your question.

After you have reached a verdict and I have discharged you, you are not required to talk with anyone about the case unless the Court orders otherwise.

sf-3740432

I will now hand the verdict form and copies of these instructions to the Court Security

Officer to deliver to the jury room.

You may now retire to the jury room to deliberate.

47