**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| WHIRLPOOL CORPORATION, | ) Civil Action No. 2:15-CV-1528 –JRG |
| Plaintiff, | ) |
| v. | ) |
| TST WATER, LLC, | ) |
| Defendant. | ) |

**TST WATER'S BRIEF IN SUPPORT OF**
**PROSECUTION HISTORY ESTOPPEL**

During the prosecution of the asserted patent, the patentee added the limitation "[w]herein [. . .] said protrusion extend[s] from said end piece wall" to make claim 1 of the patent allowable.  Based on this prosecution history, Defendant TST Water respectfully submits that Plaintiff Whirlpool Corporation should be estopped from pursuing infringement under the doctrine of equivalents for this element, which is a limitation in the following claims: 1 and 4-28, (of which claims 1, 4, 10, 12, 15, 17, 20, 24, and 27 are currently asserted by Whirlpool).

## I.  FACTUAL BACKGROUND

The examiner rejected the original independent claim 1 in the '894 patent application. Gillett Declaration Ex. A at 5 (Tr. Ex. DX102, 1932-1940; May23, 2005 Office Action).  This claim did not include a protrusion limitation at all.  Gillett Declaration Ex. B at 1 (Tr. Ex. DX102, 33-38; April 25, 2003 Original Claims).  Instead, a protrusion was only present in original claim 17, which depended from claim 1.  *Id*. at 3.

The examiner found that original claim 17 would be allowable if rewritten in independent form.  Gillett Decl. Ex. A at 8.  This required the applicant to combine claim 17 with all of the claims from which it depended: claims 1, 14, 15 and 16.  The applicant acquiesced, combining all of the limitations of these six original claims into a single new claim designated as claim 29. Gillett Decl., Ex. C at 7 (DX102 at 1941-1948) (Office Action Response).  Because the limitation "said protrusion extending from said end piece wall" had been part of original Claim 14, it became part of claim 29.  Gillett Declaration Ex. B at 3.  Claim 29 was allowed and ultimately issued as claim 1 in the '894 patent.  Gillett Decl. Ex. D (DX102 at 1951; Notice of Allowability).  Below is a comparison of original independent application claim 1 and the allowed application claim 29:

| **Application Claim 1 (Original)** | **Issued Claim 1 (Allowed)**[1] |
|---|---|
| | (*underlined new material, emphasis added*) |
| 1.     An end piece for operatively engaging a head assembly, the head assembly comprising one or more valves, for the treatment and control of fluid passing through the head assembly, said end piece comprising: | 29. An end piece for operatively engaging a head assembly, the head assembly comprising one or more valves, for the treatment and control of fluid passing through the head assembly, said end piece comprising: |
|     A. an end piece wall; |     A. an end piece wall; |
|     B. an inlet fitting having a cam surface, said inlet fitting having a longitudinal axis; and |     B. an inlet fitting having a cam surface, said inlet fitting having a longitudinal axis; and |
|     C. an outlet fitting[;] |     C. an outlet fitting; and |
| wherein said inlet fitting and said outlet fitting extend from said end piece wall, and wherein at least a portion of said cam surface is vectored from said longitudinal axis of said inlet fitting. |     D. a **protrusion** having a longitudinal axis; wherein said inlet fitting, ~~and~~ said outlet fitting, and **said protrusion extend from said end piece wall**, wherein said **protrusion** is positioned between said inlet and said outlet fittings, wherein the distance from said longitudinal axis of said inlet to said longitudinal axis of said outlet is less than the distance from said longitudinal axis of said inlet to said longitudinal axis of said **protrusion**, and wherein the distance from said inlet to said longitudinal axis of said **protrusion** is greater than the distance from said longitudinal axis of said outlet to said longitudinal axis of said protrusion, wherein the distance from said longitudinal axis of said inlet to said longitudinal axis of said outlet is about 2 cm, and wherein the distance from said inlet to said longitudinal axis of said **protrusion** is about 2 cm, and wherein the distance from said longitudinal axis of said outlet to said longitudinal axis of said protrusion is about 2 cm, and wherein at least a portion of said cam surface is vectored from said longitudinal axis of said inlet fitting. |

---

[1]     This is the language that appeared in the originally issued patent, prior to the reexamination.  None of the amendments to claim 1 in reexamination relate to the "[w]herein [. . .] said protrusion extend[s] from said end piece wall" limitation, and have no bearing on the application of prosecution history estoppel.

## II.  LEGAL STANDARD FOR PROSECUTION HISTORY ESTOPPEL

"Estoppel arises when an amendment is made to secure the patent and the amendment narrows the patent's scope."  *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 736 (2002) ("*Festo 2002*").  "A patentee's decision to narrow his claims through amendment may be presumed to be a general disclaimer of the territory between the original claim and the amended claim."  *Id.* at 740.  The Supreme Court has identified three ways in which a patentee may overcome the presumption of estoppel: "[1] that the alleged equivalent would have been unforeseeable at the time of the narrowing amendment, [2] that the rationale underlying the narrowing amendment bore no more than a tangential relation to the equivalent in question, or [3] that there was 'some other reason' suggesting that the patentee could not reasonably have been expected to have described the alleged equivalent." *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 344 F.3d 1359, 1368 (Fed. Cir. 2003) (en banc) ("*Festo 2003*"). "If the patentee fails to rebut the *Festo* presumption, then prosecution history estoppel bars the patentee from relying on the doctrine of equivalents for the accused element." *Id.* at 1367.

## III.  WHIRLPOOL'S AMENDMENT TRIGGERS A PRESUMPTON OF ESTOPPEL

### A.    Whirlpool added the narrow protrusion limitations to overcome prior art

The patentee's stated purpose in presenting the new claims was "to correspond with the claims indicated as allowable by the Examiner."   A necessary corollary to this purpose is avoiding subject matter that the examiner did not indicate as allowable, *i.e.*, to avoid the examiner's rejection.  This is a classic example of narrowing the claims for patentability.  The Supreme Court has "made clear that estoppel applies to amendments made for a substantial reason related to patentability[.]"  *Festo 2002*, 535 U.S. at 735 (internal quotation marks omitted, quoting *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 33 (1997)).

At a minimum, the patentee provided no alternative explanation for the addition of "[w]herein [. . .] said protrusion extend[s] from said end piece wall[.]"  "Where no explanation is established, however, the court should presume that the patent applicant had a substantial reason related to patentability for including the limiting element added by amendment."  *Warner-*

-3-

*Jenkinson*, 520 U.S. at 33.  Thus, at least because there is no other explanation in the prosecution history, "prosecution history estoppel would bar the application of the doctrine of equivalents" as to this limitation.  *Id*.

**B.**     **The patentee surrendered embodiments that lack a protrusion extending from the end piece wall**

Prosecution history estoppel applies to subject matter surrendered when a claim is rewritten from dependent into independent form and the original independent claim is cancelled. *Honeywell Int'l Inc. v. Hamilton Sundstrand Corp*., 370 F.3d 1131, 1144 (Fed. Cir. 2004) (*en banc*).  In such cases the Federal Circuit has held that "[e]quivalents are presumptively not available with respect to that added limitation." *Id*.

Replacing original application claim 1 with the new application claim 29 surrendered any embodiments that do not have a protrusion extending from an end piece wall.  When a dependent claim is rewritten to replace an independent claim, "the surrendered subject matter is defined by the cancellation of independent claims that do not include a particular limitation and the rewriting into independent form of dependent claims that do include that limitation." *Honeywell*, 370 F.3d at 1144.  Therefore, Whirlpool should not be allowed to assert the doctrine of equivalents with respect to any of the limitations in new application claim 29 that were not present in original application claim 1.  This includes the limitation "[w]herein [. . .] said protrusion extend[s] from said end piece wall[.]"

**C.**     **Prosecution history estoppel also applied to independent claim 4**

Prosecution history estoppel applies equally to all claims containing the "[w]herein [. . .] said protrusion extend[s] from said end piece wall" limitation.  *See Deering Precision Instruments, L.L.C. v. Vector Distribution Sys., Inc*., 347 F.3d 1314, 1326 (Fed. Cir. 2003).  It makes no difference that the original predecessor to issued claim 4 included this limitation.  The Federal Circuit squarely addressed this issue in *Deering Precision*:

> Here, as in *Builders Concrete*, independent claim 4 contained the disputed limitation and was never amended during prosecution. Nevertheless, it is clear from the prosecution history that the allowance of claim 1, the broadest claim,

> depended on the amendment narrowing the Zero Position Limitation to that of a dependent claim. Since independent claim 4 and dependent claim 5 contain the Zero Position Limitation, prosecution history estoppel presumptively applies equally to those claims. To hold otherwise would be to exalt form over substance and distort the logic of this jurisprudence, which serves as an effective and useful guide to the understanding of patent claims.

347 F.3d 1314, 1326 (Fed. Cir. 2003) (internal citations and quotation marks omitted, quoting *Builders Concrete, Inc. v. Bremerton Concrete Prod. Co*., 757 F.2d 255, 260 (Fed. Cir. 1985)).

In addition to the legal requirement of *Deering Precision*—which should alone be controlling—the prosecution history also logically supports applying estoppel to claim 4.  While original independent application claim 21 included the "extend[s] from said end piece wall" limitation, the examiner still rejected the claim and required that a further narrowing protrusion limitation be adapted from original dependent claim 23: "wherein said protrusion is positioned between said inlet fitting and said outlet fitting."  *See* Gillett Declaration Ex. A at 5, and Ex. C at 7.  Only this narrowed claim based on dependent claim 23 was ultimately approved.  Gillett Decl. Ex. D.  This suggests that a narrowly tailored "protrusion" limitation was necessary for the patentability of claim 4 as well as claim 1.

## IV.  WHIRLPOOL CANNOT SHOW THAT AN EXCEPTION APPLIES

Because the patentee's addition of "[w]herein [. . .] said protrusion extend[s] from said end piece wall" raises a presumption of prosecution history estoppel, Whirlpool can only pursue the doctrine of equivalents for these limitations if one of the three *Festo* exceptions applies.  *See EMD Millipore Corp. v. AllPure Techs., Inc.*, 768 F.3d 1196, 1203 (Fed. Cir. 2014).

### A.    The alleged equivalent would have been foreseeable at the time

"An equivalent is foreseeable if one skilled in the art would have known that the alternative existed in the field of art as defined by the original claim scope, even if the suitability of the alternative for the particular purposes defined by the amended claim scope were unknown."  *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co*., 493 F.3d 1368, 1382 (Fed. Cir. 2007) ("*Festo 2007*").  For this exception to apply, Whirlpool would have to establish that a person of ordinary skill in the art at the time of the amendment could not have foreseen the

possibility of moving the protrusion from one part of the cartridge to another.  It is not be enough for Whirlpool to prove that alternative configurations were not known to be suitable at the time—Whirlpool must show that different configurations were unknown in the art. Whirlpool cannot possibly meet this burden.

Moreover, the technology that Whirlpool considers equivalent is old.  TST Water's accused products are still manufactured through basic injection molding.  Old technology, while not always foreseeable, is more likely to have been foreseeable than later-developed technology. *Festo 2003*, 344 F.3d at 1369.  There is no reason the patentee could not have predicted a different configuration of the protrusion in a later device.

In addition, "[a]n alternative is foreseeable if it is disclosed in the pertinent prior art in the field of the invention." *Duramed Pharm., Inc. v. Paddock Labs*., Inc., 644 F.3d 1376, 1380 (Fed. Cir. 2011) (quoting *Festo 2007,* 493 F.3d at 1379).  Protrusions extending from structures other than the end piece wall were known in the prior art, which means they were foreseeable.  For example, the patentee referred to U.S. Pat. Nos. 3,399,776 in the background section of the '894 patent.  This '776 patent includes a protrusion, which engages the end piece, but does not extend from the end piece wall.  Rather it extends from the head assembly or "valve body." Gillett Declaration Ex. E ('776 patent).



This cited prior art demonstrates that the patentee could have foreseen placing the protrusion in a variety of locations, such as attached to the head assembly or the side wall of the filter.

**B.** **The rationale underlying the narrowing amendment has more than a tangential relationship to the equivalent at issue**

"To rebut the estoppel presumption with tangentiality, a patentee must demonstrate that the rationale underlying the amendment bore no more than a tangential relation to the equivalent in question. *Honeywell Int'l, Inc. v. Hamilton Sundstrand Corp*., 523 F.3d 1304, 1315 (Fed. Cir. 2008) (citing *Festo 2003*, 344 F.3d at 1369). "If the prosecution history reveals no reason for the narrowing amendment, the presumption is not rebutted." *Id.* "[T]he tangential relation criterion

for overcoming the *Festo* presumption is very narrow." *Cross Medical Products, Inc. v. Medtronic Sofamor Danek, Inc*., 480 F.3d 1335, 1342 (Fed. Cir. 2007).

The Federal Circuit has held that if "the alleged equivalent focuses on the [added] limitation, the amendment [bears] a direct, not merely tangential, relation to the equivalent." *Honeywell Int'l*, 523 F.3d 1304, 1316 (Fed. Cir. 2008).  This is exactly the situation in the present case.  When, per the examiner's suggestion, the patentee rewrote dependent application claim 17 as an independent claim, it added the "extend[ing] from said end piece wall" limitation to the independent claim; TST Water's alleged equivalent design – which attaches the protrusion to the fittings rather than the end piece wall – focuses on this added limitation.

In addition, just as in *Iris Connex, LLC v. Acer Am. Corp*., the amendment at issue here added the narrowing limitation for the purpose of avoiding prior art rejections. No. 2:15-CV-1909-JRG, 2016 WL 4596043, at *21 (E.D. Tex. Sept. 2, 2016) ("Next the tangential relation grounds does not apply because the amendment was made to overcome prior art.")  The examiner  expressly stated that adding the "extend[s] from said end piece wall" limitation (along with the other limitations in the claims from which original claim 17 depended) would make the claim allowable.  As such, the amendment can hardly be considered tangential.

Moreover, if the patentee had disagreed with the examiner's suggestion that the "extend[s] from said end piece wall" limitation was necessary to overcome the prior art, then the patentee should have continued to argue and even appeal the original rejected patent claims. Instead, the patentee acquiesced in the examiner's rejection; now Whirlpool must be satisfied with these limited claims.  Whirlpool cannot use the doctrine of equivalents to eliminate the public notice provided by the patentee's original prosecution.  "[A]s between the patentee who had a clear opportunity to negotiate broader claims but did not do so, and the public at large, it is the patentee who must bear the cost of its failure to seek protection for this foreseeable alteration of its claimed structure." *Sage Prod., Inc. v. Devon Indus., Inc.*, 126 F.3d 1420, 1425 (Fed. Cir. 1997).

-8-

**C.** **There was no other reason suggesting that the patentee could not have been expected to describe the alleged equivalent**

"This category, while vague, must be a narrow one[.]" *Festo 2003*, 344 F.3d at 1370. "The other reason must be such that the patentee could not reasonably be expected to write a claim to encompass the equivalent, such as a shortcoming of language." *Amgen Inc. v. Hoechst Marion Roussel, Inc*., 457 F.3d 1293, 1316 (Fed. Cir. 2006) (internal quotation and citation marks omitted). "[W]hether the patentee, the examiner, or a person of skill in the art may have thought the claims encompassed [the alleged equivalent] does not excuse the patentee's failure to claim the equivalent." *Id*.

Nothing stood in the patentee's way of claiming the invention more broadly without a limitation regarding what structure the protrusion extends from. There has never been a suggestion that the patentee suffered from any linguistic barrier or other challenge that interfered with its ability to draft claims. For example, the patentee could have claimed the protrusion with no requirement as to extending from the end piece wall, and then just added any separate limitations needed to make the claim patentable, as in issued claim 2. Accordingly, Whirlpool cannot show that this third rebuttal criterion has been met.

In addition, "a patentee may not rely on the third rebuttal criterion if the alleged equivalent is in the prior art, for then 'there can be no other reason the patentee could not have described the substitute in question.'" *Festo 2003*, 344 F.3d at 1370 (quoting *Pioneer Magnetics, Inc. v. Micro Linear Corp*., 330 F.3d 1352, 1357 (Fed. Cir. 2003)). As identified above, the prior art clearly included references having protrusions with different configurations, such as the configuration of the '776 patent identified in the background of the patent.

## V. **CONCLUSION**

For the foregoing reasons, TST Water respectfully requests that Whirlpool be precluded from pursuing infringement under the doctrine of equivalents as to the "extend[s] from said end piece wall" limitation.

Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP


Dated: February 28, 2017          By: */s/ Sean M. Murray*
                                      John B. Sganga, Jr. (CA SBN 116211)
                                      john.sganga@knobbe.com
                                      (*Admitted to practice in the Eastern District of Texas*)
                                      Sean M. Murray (CA SBN 213655)
                                      sean.murray@knobbe.com
                                      (*Admitted to practice in the Eastern District of Texas*)
                                      Justin J. Gillett (CA SBN 298150)
                                      justin.gillett@knobbe.com
                                      (*Admitted to practice in the Eastern District of Texas*)
                                      Kim A. Kennedy (CA SBN 305499)
                                      kim.kennedy@knobbe.com
                                      *(Admitted Pro Hac Vice)*
                                      KNOBBE, MARTENS, OLSON & BEAR, LLP
                                      2040 Main Street, Fourteenth Floor
                                      Irvine, CA 92614
                                      Telephone: (949) 760-0404
                                      Facsimile:  (949) 760-9502

                                      CAPSHAW DERIEUX, LLP

                                      Elizabeth L. DeRieux
                                      Texas Bar No. 05770585
                                      ederieux@capshawlaw.com
                                      D. Jeffrey Rambin
                                      Texas Bar No. 00791478
                                      jrambin@capshawlaw.com
                                      114 E. Commerce Ave.
                                      Gladewater, Texas 75647
                                      Tel: (903) 236-9800
                                      Fax: (903) 236-8787

                                      Attorneys for Defendant
                                      TST Water, LLC

## <u>CERTIFICATE OF SERVICE</u>

I certify that counsel of record who are deemed to have consented to electronic service are being served on February 28, 2017, with a copy of this document via the Court's CM/ECF systems per Local Rule CV-5(a)(3). Any other counsel will be served electronic mail, facsimile, overnight delivery and/or First Class Mail on this date.

*/s/ Sean M. Murray*
Sean M. Murray

25354504