# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | | |
|---|---|---|
| WHIRLPOOL CORPORATION, | § § § | |
| Plaintiff, | § § | Civil Action No. 2:15-CV-1528-JRG |
| v. | § § | |
| TST WATER, LLC, | § § | **JURY TRIAL DEMANDED** |
| Defendant. | § § § | |

# WHIRLPOOL'S BRIEF
# REGARDING PROSECUTION HISTORY ESTOPPEL

I.      **INTRODUCTION**

The allowance of issued claims 1 and 4 did not result from inclusion of the "protrusion extending from the end piece wall" limitation. This is clear from the fact that the Examiner rejected application claim 16, which included this limitation, and allowed it only after application claim 17's "about 2 cm" requirements were incorporated. On this basis alone, the Court can deny TST's prosecution history estoppel motion.

TST's arguments rely on three mistaken assumptions, *viz*.:

(i) TST compares application claims 1 and 17, when the appropriate comparison is really application claims 16 and 17;

(ii) TST argues that Whirlpool incorporated the "protrusion extending" limitation into application claim 1 to overcome the prior art, when in fact it was the "about 2 cm" distance limitations that led to allowance; and

(iii) TST suggests that *Honeywell, Inc. v. Hamilton Sundstrand Corp.*, 370 F.3d 1131 (Fed. Cir. 2004) supports its position, when *Honeywell* and other Federal Circuit authority confirm that prosecution history estoppel does not apply in this case.

**Improper focus on claim 1.** During original examination, application claims 1, 14, 15, and 16 stood rejected. But the Examiner indicated that claim 16's dependent claim, claim 17, "would be allowable if rewritten in independent form." Whirlpool thus submitted new claim 29 by combining claims 16 and 17. And because claim 16 depended on claims 1, 14, and 15, Whirlpool incorporated those limitations into new claim 29.

Against this backdrop, the appropriate comparison for the prosecution history analysis is between application claims 16 and 17—not claims 1 and 17. The additional limitations in claim 17 were what gave rise to the subsequent amendments and then allowance. As the claims on which claim 17 depended stood rejected, incorporating their limitations when rewriting claim 17 in independent form could not have surrendered equivalents for those limitations.

**"Protrusion extending" not the basis for allowance**. Relatedly, the "protrusion extend[ing]" limitation plainly was not added to overcome the prior art. The "protrusion extending" limitation existed in *original* application claim 14. It was claim 17's requirements that the distances between the inlet fitting, outlet fitting, and protrusion be "about 2 cm" that

were incorporated into new claim 29 to obtain allowance over the Stevens and Clack references.

***Honeywell*.** Finally, TST's own authority undermines its view that prosecution history estoppel applies. As the Federal Circuit explained in *Honeywell*:

> The scope of the patentee's concession is determined on a ***limitation-by-limitation basis***. It necessarily follows that the presumption of surrender applies only to the amended or newly added limitation; there is ***no surrender of territory as to unamended limitations that were present in the original claim***.

370 F.3d at 1144. Because the "protrusion extend[ing]" limitation existed in original application claim 14, Whirlpool did not surrender any claim scope for that limitation via its amendments.

For all of these reasons, and as discussed below, the Court should reject TST's belated attempt to raise prosecution history estoppel as a complete defense to equivalents.

## II.     FACTUAL BACKGROUND

**The Prosecution History.** Issued claim 1 did not spring to life by combining application claims 1 and 17 directly, but by combining all of the limitations of claims 1, 14, 15, 16, and 17 into new claim 29. The text of all of these original application claims appears below:

| |
|---|
| 1. [Original] An end piece for operatively engaging a head assembly, the head assembly comprising one or more valves, for the treatment and control of fluid passing through the head assembly, said end piece comprising:<br>  A.  an end piece wall;<br>  B.  an inlet fitting having a cam surface, said inlet fitting having a longitudinal axis; and<br>  C.  an oulet fitting[,]<br>wherein said inlet fitting and said outlet fitting extend from said end piece wall, and wherein at least a portion of said cam surface is vectored from said longitudinal axis of said inlet fitting. |
|    14. [Original] The end piece of claim 1, further comprising a protrusion having a longitudinal axis, said protrusion extending from said end piece wall. |
|      15. [Original] The end piece of claim 14, wherein said protrusion is position between said inlet and outlet fittings. |
|        16. [Original] The end piece of claim 15, wherein the distance from said longitudinal axis of said inlet to said longitudinal axis of said outlet is less than the distance from said longitudinal axis of said inlet to said longitudinal axis of said protrusion, and wherein the distance from said inlet to said longitudinal axis of said protrusion is greater than the distance from said longitudinal axis of said outlet to said longitudinal axis of said protrusion. |
|         17. [Original] The end piece of claim 16, wherein the ***distance from said*** |

> *longitudinal axis of said inlet to said longitudinal axis of said outlet is about 2 cm*, and wherein the *distance from said inlet to said longitudinal axis of said protrusion is about 2 cm*, and wherein the *distance from said longitudinal axis of said inlet to said longitudinal axis of said outlet is about 2 cm*.
>
> (Apr. 25, 2003 Claims (Dkt. 140-3) at 32-34 (emphasis added).)

Examination of the '894 patent was short, involving only a single non-final Office Action and Response. The Examiner initially rejected application claims 1 and 14 as anticipated by U.S. Patent No. 3,228,413 to Stevens, arguing that it disclosed all claim limitations. In particular, the Examiner alleged that Stevens' element 106 satisfied claim 14's "protrusion extending from [the] end piece wall" limitation (May 23, 2005 Office Action (Dkt. 140-2) at 5):



The Examiner acknowledged that the prior art references did not disclose claim 17's "about 2 cm" distance limitations. This is because he noted that claim 17 "would be allowable if rewritten in independent form." (*Id*. at 7.)

Accepting the Examiner's guidance, Whirlpool submitted new application claim 29:

> 29. [New] An end piece for operatively engaging a head assembly, the head assembly comprising one or more valves, for the treatment and control of fluid passing through the head assembly, said end piece comprising:
>
>   A.  an end piece wall;
>   B.  an inlet fitting having a cam surface, said inlet fitting having a longitudinal axis; and
>   C.  an outlet fitting; and
>   D.  a protrusion having a longitudinal axis;
>
> [w]herein said inlet fitting. said outlet fitting, and said protrusion extend from said end piece wall, wherein said protrusion is positioned between said inlet and said outlet fittings,
>
> wherein the distance from said longitudinal axis of said inlet to said longitudinal axis of said outlet is less than the distance form said longitudinal axis of said inlet to said longitudinal

> axis of said protrusion, and wherein the distance from said inlet to said longitudinal axis of said protrusion is greater than the distance from said longitudinal axis of said outlet to said longitudinal axis of said protrusion,
>
> *wherein the distance from said longitudinal axis of said inlet to said longitudinal axis of said outlet is about 2 cm, and wherein the distance from said inlet to said longitudinal axis of said protrusion is about 2 cm, and wherein the distance from said longitudinal axis of said outlet to said longitudinal axis of said protrusion is about 2 cm, and wherein at least a portion of said cam surface is vectored from said longitudinal axis of said inlet fitting.*
>
> (Aug. 23, 2005 Response (Dkt. 140-4) at 3-4 (emphasis added).))

New application claim 29 corresponded to former claim 17, but rewritten in independent form as the Examiner had suggested. Whirlpool simultaneously submitted new application claims 30-32 and canceled all other pending application claims, including claim 17. Application claims 29, 30, 31, and 32 issued as '894 patent claims 1, 2, 3, and 4, respectively. (*Id.*)

**Relevance of Prosecution History Estoppel to This Litigation.** Whirlpool has alleged that TST's W-5 product has a protrusion that "extend[s] from the end piece wall," as claims 1 and 4 require. Whirlpool argues that the W-5 satisfies this limitation literally or by equivalents.

TST disagrees. First, TST posits that it cannot literally infringe because its protrusion does not "directly" extend from the end piece wall. Second, TST contends that it does not infringe by equivalents, as its "indirect" "extension" is "substantially different." Third, TST argues that prosecution history estoppel bars equivalents here. This last reason is why TST insists that the Court address this issue on the eve of trial.

## III. LEGAL STANDARD

**Generally.** The doctrine of prosecution history estoppel prevents a patentee who "originally claimed the subject matter alleged to infringe, but then narrowed the claim in response to a rejection" from arguing that the "surrendered territory" is equivalent. *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 735 (2002). The patentee's acceptance of a narrowing amendment raises a presumption of prosecution history estoppel. *See id.* at 741. The patentee may rebut the presumption by showing that "the equivalent [was] unforeseeable at the time of the application" or that "the rationale underlying the amendment . . . [bore] no more than a tangential relation to the equivalent in question." *Id.* at 740.

**The focus is on specific limitations.** "The scope of the patentee's concession is determined on a limitation-by-limitation basis." *Honeywell Int'l, Inc. v. Hamilton Sundstrand Corp.*, 370 F.3d 1131,1144 (Fed. Cir. 2004). The "inquiry focuses on the patentee's objectively apparent reason for the narrowing amendment." *Adrea, LLC v. Barnes & Noble, Inc.*, No. 13-cv-4137, 2014 U.S. Dist. LEXIS 154469, at *3 (S.D.N.Y. Oct. 13, 2014) (citations omitted); *accord Funai Elec. Co. v. Daewoo Elecs. Corp.*, 616 F.3d 1357, 1368 (Fed. Cir. 2010) ("[T]he analysis focuses on the claims as originally filed, the amendments made, and the reasons therefor.").

**For re-written limitations, the focus is on surrendered scope.** "[W]hen a claim is re-written from dependent into independent form and the original independent claim is cancelled, 'the correct focus is on whether [the] amendment surrendered subject matter.'" *Honeywell*, 370 F.3d at 1144 (citations omitted). "[T]he surrendered subject matter is defined by the cancellation of independent claims that do not include a particular limitation and the rewriting into independent form of claims that do include that limitation." *Id.*

**No estoppel where not amended.** Estoppel "does not arise in every instance when a patent application is amended." *Festo*, 535 at 735. "Where a claim has been rewritten from dependent to independent form without undergoing any other substantial alterations . . . an 'amendment' for the purpose of evoking prosecution history estoppel has not occurred." *Fulhorst v. Toyota Motor Corp.*, No. 00-cv-71-DF, 2002 U.S. Dist. LEXIS26470, at *34 (E.D. Tex. Mar. 27, 2002). "[T]he presumption of surrender applies only to the amended or newly added limitation; there is no surrender of territory as to unamended limitations that were present in the original claim." *Honeywell*, 370 F.3d at 1144.

IV.   **ARGUMENT**

    A.   **The appropriate comparison is with application claim 16, not claim 1.**

At the outset, TST's prosecution history analysis focuses on the wrong claim.

Application claim 16 depended on 15, which depended on 14, which depended on 1.[1]  After the lone Office Action, all four claims stood rejected.  But the Examiner indicated that claim 17, which depended on 16, was allowable if rewritten in independent form, and Whirlpool complied.

As the Federal Circuit explained in *Honeywell,* "the surrendered subject matter is defined by the cancellation of independent claims that **do not include a particular limitation** and the rewriting into independent form of claims that do include that limitation."  370 F.3d at 1144 (emphasis added).[2]  Because claim 16, the narrowest claim that lacked the "about 2 cm" limitation, was rejected but claim 17 was allowed, the appropriate inquiry focuses on the differences between these claims.  *See id.*

Accordingly, TST's desire to focus on claims 1 and 17 makes no sense.  There was "no surrender of territory as to [the] unamended limitations that were present in . . . [that] original claim," and thus there is no reason to focus on it.[3]  *Id*.

### B. As to application claim 16, no amendments to the "protrusion extending from the end piece" limitation were made that give rise to estoppel.

Dependent application claim 16 incorporated the limitations of the claims on which it depended, including claim 14.  Application claim 16 therefore also included the "protrusion extending" requirement.  But the re-writing of dependent application claim 17 into independent form had nothing to do with that "protrusion extending" limitation, whether in claim 16 or 14.

The Examiner allowed claim 17 because the prior art lacked the "about 2 cm" distance limitations, not because the protrusion did or did not extend directly from the end piece wall.

---

[1] A claim may be written in independent or dependent form. *See* 35 U.S.C. § 112(c).  The only difference is that a dependent claim incorporates by reference all of the limitations of the claim to which it refers.  § 112(d).  The tests for infringement or invalidity are identical.
[2] *Honeywell* addressed both the more common situation in which a dependent claim's limitations are added to its independent base claim and the situation, as here, where there were intermediate dependent claims.  *Id.* at 1141, 1144 (noting, incorrectly, that application claim 49 was independent, when in fact it was dependent on application claim 48).  The *Honeywell* court limited the estoppel only to the "inlet guide vane" limitation added in the final dependent claim in each instance.  This is equivalent to estoppel applying to claim 17's "about 2cm" limitation.
[3] Under TST's logic, rewriting **any dependent claim** that depends indirectly on a base claim would foreclose equivalents for all limitations in the base and all intervening claims.  TST has cited no authority supporting this extreme position.

The "protrusion extending" limitation was never amended or discussed as a basis for allowance. Nor could it have been incorporated as the basis for allowance, as the Examiner's position was that element 106 of the Stevens reference disclosed the "protrusion extending" limitation.

For all of these reasons, prosecution history estoppel does not limit the scope of equivalents for the "protrusion extending" limitation. *See Honeywell*, 370 F.3d at 1144; *cf. Best Management Prods., Inc. v. New England Fiberglass, LLC*, No 07-151-JL, 2008 U.S. Dist. LEXIS 39462, at *27 (D.N.H. May 12, 2008) (where parent claim included "vent" limitation and objected dependent claims were rewritten in independent form, no narrowing amendment occurred as to the "vent" limitation as to give rise to prosecution history estoppel).

      **C.**    **The incorporation of application claim 14's "protrusion extending" limitation into new application claim 29 was unrelated to patentability.**

As previously noted, application claims 1, 14, 15, and 16 stood rejected after the first Office Action. The Examiner implicitly conceded, however, that the art of record (including Stevens and U.S. Patent No. 5,460,719 to Clack) did not disclose claim 17's "about 2 cm" limitations. He thus indicated that claim 17 would be allowable if rewritten in independent form.

Again, the subsequent re-writing of claim 17 into independent form was for reasons completely unrelated to claim 14's "protrusion extending from the end piece wall" limitation. The Examiner allowed claim 17 based on its additional "about 2 cm" limitations. The combination of claim 14's limitations (including the "protrusion extending" limitation) with claims 1, 15, and 16 was not the basis for the Examiner's basis for allowance or patentability.

Critically, TST does not seriously argue that the "protrusion extending" limitation was incorporated into new claim 29 for patentability purposes. Instead, TST argues only that:

- "[T]he examiner[] suggest[ed] that the 'extend[s] from said end piece wall' limitation was ***necessary to overcome the prior art***." (Dkt. 140 at 8.)

- "The examiner *expressly* stated that adding the "extend[s] from the end piece wall" limitation (along with the other limitations in the claims from which original claim 17 depended) would make the claim allowable." (*Id.* at 8.)

- "During the prosecution of the asserted patent, the patentee added the limitation '[w]herein [. . . ] said protrusion extend[s] from said end piece wall" ***to make claim 1 allowable***." (*Id.* at 1.)

- 7 -

Even ignoring TST's lack of support for these statements, each is **demonstrably false**:

- Having rejected claim 14 based on Steven's element 106, the Examiner could not possibly have been suggesting that adding the "protrusion extending from the end piece wall" limitation would overcome the prior art.

- The Examiner also could not have "expressly" stated that adding the "extend from the end piece wall" limitation would make the claim allowable. He discussed the limitation only once—again, in the context of asserting that Stevens disclosed it.

- For these same reasons, Whirlpool could not have been incorporating the "protrusion extending" limitation into new application claim 29 to "make it allowable."[4]

TST's inability to "articulate [a] reason why the amendment [concerning "protrusion extending from the end piece wall"] was necessary to secure patentability," and its reliance on the "mere occurrence of an amendment to the claim language," confirm that TST's prosecution history estoppel arguments should be rejected. *Hologram USA, Inc. v. Pulse Evolution Corp.*, No. 14-cv-772-GMN, 2017 U.S. Dist. LEXIS 13087, at *20 (D. Nev. Jan. 31, 2017) (also explaining that the "existence of an amendment alone does not illuminate why the amendments were necessary for patentability"); *accord Zinus, Inc. v. Simmons Bedding Co.*, No. C-07-3012-PUT, 2008 U.S. Dist. LEXIS 30791, at *36 (N.D. Cal. Mar. 11, 2008) (no estoppel where defendant did not submit any evidence "that would support a finding that Applicants made any amendments to the claims [that] surrendered [the] equivalent").

### D. Regardless, the "tangential" exception prevents estoppel here.

Even assuming that: (i) the appropriate comparison was between application claims 1 and 17; (ii) the "protrusion extending from the end piece wall" limitation was somehow amended; and (iii) the addition of the "protrusion extending" limitation was to secure allowance, the Court still should hold that prosecution history estoppel does not apply. Under *Festo's* "tangential" exception, the "rationale underlying the amendment [bears] no more than a tangential relation to

---

[4] TST's separate suggestion that Whirlpool was obligated to "continue[] to argue and even appeal the original rejected patent claims" based on the "protrusion extending" limitation, or risk the application of prosecution history estoppel, is incorrect. (Dkt. 140 at 8.) Prosecution history estoppel may apply where the patentee acquiesces to an Examiner's rejection to **secure allowance**. *Festo*, 535 U.S. at 736 ("Estoppel arises when an amendment is made to secure the patent and the amendment narrows the patent's scope"). But the doctrine does not apply because a patentee simply elects not to respond by challenging an Examiner's rejection.

the equivalent in question." 535 U.S. at 740.

The Examiner indicated that claim 17 should be allowed because it specified "about 2 cm" distance requirements that were absent from both Stevens and Clack. Via its subsequent amendment, Whirlpool admittedly surrendered any scope of equivalents for the "about 2 cm" distance requirements. But Whirlpool's claim amendments to specify these distances had nothing to do with whether the "protrusion" in issued claims 1 and 4 "extend[ed]" directly or indirectly "from the end piece wall."

Numerous cases hold that prosecution history estoppel does not apply in a situation like this. For example, *Funai Elec. Co. v. Daewoo Elecs. Corp.,* held no estoppel where "it is apparent that the [limitation] was not a factor in the allowance of [the] claim [and] not at issue during prosecution." 616 F.3d 1357, 1369 (Fed. Cir. 2010). Similarly, *Regents of the Univ. of Cal. v. Dakocytomation Cal., Inc.*, held no estoppel where the "patentees' arguments centered on the method of blocking—not on the particular type of nucleic acid that could be used for blocking." 517 F.3d 1364, 1378 (Fed. Cir. 2008); *see Insituform Techs., Inc. v. CAT Contracting, Inc.*, 385 F.3d 1360, 1371 (Fed. Cir. 2004) (no estoppel where amendment limiting claim to a "single cup process" bore only tangential relationship to "process using multiple cups"); *Adrea,* 2014 U.S. Dist. LEXIS 154469, at *5 (no estoppel where "rationale behind the amendment was to introduce the concept of a lending period in the first place, not to specify the precise moment at which the lending period begins to run"); *Diodem, LLC v. Lumenis Inc.*, No. CV03-2142-GAF, 2005 U.S. Dist. LEXIS 49470, at *33 (C.D. Cal. 2005) (no estoppel where "purpose of the amendment was not to disclaim the use of multi-wavelength beams" generally, but to distinguish prior art describing "delivery of multiple laser beams through a single tool").[5]

---

[5] Because the "tangential" exception disposes of TST's estoppel arguments, Whirlpool need not also show that the "unforeseeable equivalent" exception applies. TST's own patent filings, however, contradict its contention that a protrusion indirectly extending from the end piece wall would have been foreseeable in April 2003, when Whirlpool applied for the '894 patent. For example, TST's U.S. Patent Application No. 14/970,310 claims that a "projection extending from a lateral support" that is "spaced apart from the end piece wall" (*i.e.,* a protrusion that extends indirectly from the end piece wall) is novel. *See, e.g.,* https://www.google.com/patents/US20150307365.

### E. Because estoppel does not apply to claim 1, it also does not apply to claim 4.

TST's arguments that prosecution history estoppel applies to issued claim 4's "protrusion extending" limitation primarily depend on its arguments for issued claim 1. Because Whirlpool's amendments during prosecution do not bar it from asserting that TST's W-5 product satisfies claim 1's "protrusion extending" limitation under the doctrine of equivalents, Whirlpool should be allowed to raise the same arguments when asserting claim 4 as well.

TST's secondary argument—that the prosecution history of application claims 21 and 23 somehow also demonstrates estoppel—is factually reckless and legally incorrect. (Dkt. 140 at 5.) First, as a factual matter, the Examiner did not "require[] that a further narrowing protrusion limitation be adapted from original dependent claim 23" into application claim 21. (*Id.*) Instead, the Examiner initially rejected application claim 21 and its dependent claims, 22 and 23, because they confusingly recited "[a] cartridge, . . . said end piece comprising." (Apr. 25, 2003 Claims at 35-36 (Dkt. 140-2) at 35; May 23, 2005 Non-Final Office Action (Dkt. 140-2) at 3-4.) Whirlpool corrected this typographical error in its Response when submitting new application claim 32 (corresponding to issued claim 4). (Aug. 23, 2005 Resp. (Dkt. 140-4 at 5).)

Second, as a legal matter, TST's mischaracterization of the prosecution history (even if correct) would confirm that prosecution history estoppel could *not* apply to issued claim 4's "protrusion extending" limitation. Per TST, issued claim 4 was allowed only because the "protrusion [was] positioned between [the] inlet [and] outlet fitting[s]." Under *Honeywell,* equivalents would be surrendered only for a protrusion not positioned between those two fittings. But equivalents would not be barred for the "protrusion extending" limitation. 370 F.3d at 1144.

## V. CONCLUSION

Whirlpool's amendments during original examination to rewrite application 17 in dependent form did not estop it from asserting equivalents as to the "protrusion extending from the end piece wall" limitation. Whirlpool therefore urges the Court to hold that prosecution history estoppel does not bar its equivalents theories for that limitation.

Dated:  March 2, 2017

Respectfully submitted,

**MORRISON & FOERSTER LLP**

By:  */s/ Richard S.J. Hung*
     RICHARD S.J. HUNG

MICHAEL A. JACOBS (CA SBN 111664)
(admitted in the Eastern District of Texas)
mjacobs@mofo.com
RICHARD S.J. HUNG (CA SBN 197425)
(admitted in the Eastern District of Texas)
rhung@mofo.com
BARBARA N. BARATH (CA SBN 268146)
(admitted in the Eastern District of Texas)
bbarath@mofo.com
C. JAMIESON KENDALL (CA SBN 302683)
(admitted in the Eastern District of Texas)
ckendall@mofo.com
RACHEL S. DOLPHIN (CA SBN 305477)
(admitted in the Eastern District of Texas)
rdolphin@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California  94105-2482
Telephone: (415) 268-7000
Facsimile: (415) 268-7522

MELISSA R. SMITH
GILLAM & SMITH, LLP
(TX State Bar No. 24001351)
melissa@gillamsmithlaw.com
303 S. Washington Ave.
Marshall, Texas 75670
Telephone: (903) 934-8450
Facsimile: (903) 934-9257

- 12 -

        T. JOHN WARD, JR.
        (TX State Bar No. 00794818)
        jw@wsfirm.com
        CLAIRE ABERNATHY HENRY
        (TX State Bar No. 24053063)
        claire@wsfirm.com
        ANDREA FAIR
        andrea@wsfirm.com
        WARD, SMITH & HILL, PLLC
        1507 Bill Owens Parkway
        Longview, Texas 75604
        Telephone: (903) 757-6400
        Facsimile: (903) 757-2323

        JEFFREY D. HARTY (IA AT0003357)
        jeff.harty@nyemaster.com
        DAVID T. BOWER (IA AT0009246)
        dbower@nyemaster.com
        NYEMASTER GOODE, P.C.
        700 Walnut, Ste. 1600
        Des Moines, IA  50309
        Telephone:  (515) 283-5506
        Facsimile:  (515) 283-3108

        *Attorneys for Plaintiff*
        **WHIRLPOOL CORPORATION**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on March 2, 2017 to all counsel of record via electronic filing.

*/s/ Richard S.J. Hung*
RICHARD S.J. HUNG